[S. F. No. 3759.    In Bank.—January 7, 1905.]

# UNION SAVINGS BANK OF SAN JOSE, Respondent, v. JEREMIAH LEITER, Appellant.

BANKS—INSOLVENCY—ASSESSMENT FOR UNPAID STOCK—AUTHORITY OF DIRECTORS—PROVISIONS OF CIVIL CODE—ELECTION TO SUE.—The directors of a savings bank which has been adjudged insolvent at suit of the attorney-general, on notice of the bank commissioners, may, for the purpose of liquidating its indebtedness and paying its

creditors, levy an assessment upon the unpaid capital stock for a sufficient sum to pay the creditors in accordance with the provisions of the Civil Code relative to assessments; and if not paid may elect to proceed by suit to recover the amount of the same.

ID.—BY-LAW NOT EFFECTIVE AGAINST CREDITORS—STATUTE PART OF CONTRACT.—A by-law of the bank forbidding the directors to levy an assessment of a greater amount than thirty per cent of the capital stock, except by a two-thirds vote of the stockholders, may be attacked by creditors without notice, and must be construed in connection with the provisions of the statute authorizing the levy of a sufficient assessment to pay the creditors of the insolvent bank, and is ineffective so far as conflicting with the statute, which entered into and became a part of the subscriber's contract with the corporation.

ID.—STATUTE OF LIMITATIONS.—If the statute of limitations may be deemed applicable to the case, it does not begin to run against the right to enforce an assessment upon the stockholders on account of unpaid stock of the insolvent bank until the levy has been made and the directors have elected to proceed by action.

ID.—EFFECT OF UNPAID ASSESSMENT—RUNNING OF STATUTE—POWER OF DIRECTORS—NEW ASSESSMENT.—Where nothing was ever paid upon a former assessment levied upon the unpaid capital stock, and it was declared rescinded and waived, though it may be conceded that the statute of limitations began to run against it, yet the assessment not being paid the power of the directors in liquidation to levy assessments under subdivision 1 of section 332 of the Civil Code was not exhausted, and the statute of limitations as to a new assessment did not commence to run prior to its levy.

ID.—PAYMENTS TO CREDITORS UNDER JUDGMENTS—CAPITAL STOCK.—Payments made by the defendant to creditors of the bank under judgments against him by such creditors, upon defendant's liability to them under section 322 of the Civil Code, cannot be considered as payments made upon the capital stock.

ID.—REPEAL OF BANK COMMISSION ACT — JUDGMENT AND POWER OF DIRECTORS NOT AFFECTED.—The repeal of the Bank Commission Act on March 2, 1903, without any saving clause as to pending litigation, could not affect a judgment theretofore given in pursuance of its provisions decreeing a bank insolvent and requiring it to proceed under the management of its directors to close up its affairs and liquidate its indebtedness. Nor could such repeal affect the power of the directors to levy and collect an assessment upon the unpaid capital stock under the Civil Code.

APPEAL from a judgment of the Superior Court of Santa Clara County.   A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

S. G. Tompkins, and S. F. Leib, for Appellant.

The shares were issued under the by-law as fully paid at the rate of thirty cents per share, under a contract that no further call should be made except by a two-thirds vote of all the stock. The corporation suing upon the stock must take the by-law as they find it, and both the company and the creditors are bound by such contract until it is set aside as a fraud upon them. (*Scoville* v. *Thayer,* 105 U. S. 156.) There is no allegation of fraud or of ignorance of the creditors. If they had notice of the by-law they cannot recover. (*Bent* v. *Underdown,* 156 Ind. 516, and cases cited; *First Nat. Bank of Deadwood* v. *Gustin etc. Mining Co.,* 42 Minn. 327;[1] *Hospes* v. *Northwestern etc. Co.,* 48 Minn. 174.[2]) One claiming the benefit of want of notice must allege it. (*Long* v. *Dollarhide,* 24 Cal. 218; *Wilhoit* v. *Lyons,* 98 Cal. 413; *Beattie* v. *Crewdson,* 124 Cal. 579; *Jordan* v. *Grover,* 99 Cal. 194.) Fraud must be alleged and proved with particularity. (*Truett* v. *Onderdonk,* 120 Cal. 588.) The action is barred by limitation within two years, being upon an implied contract to pay the residue of the subscription. (Civ. Code, sec. 332, subd. 1; *Glenn* v. *Saxton,* 68 Cal. 358; *Walter* v. *Merced Academy Assn.,* 126 Cal. 583-585; *Vermont etc. Co.* v. *Declez etc. Co.,* 135 Cal. 588; *Webster* v. *Upton,* 91 U. S. 65, 69; *Sanger* v. *Upton,* 91 U. S. 64; *Handley* v. *Stutz,* 139 U. S. 417.) The repeal of the Bank Commission Act in 1903 abated the suit by the statutory trustees who were acting under that act. (*Argues* v. *Union Savings Bank,* 133 Cal. 140; 23 Am. & Eng. Ency. of Law, 1st ed., p. 501, note; *Napa State Hospital* v. *Flaherty,* 134 Cal. 318; *Musgrove* v. *Vicksburg etc. R. R. Co.,* 50 Miss. 677; *Denver etc. Ry. Co.* v. *Crawford,* 11 Colo. 598; *Union Pacific Ry. Co.* v. *Proctor,* 12 Colo. 194; *South Carolina* v. *Gaillard,* 101 U. S. 433; *Sherman* v. *Grinnell,* 123 U. S. 679; *Gurnee* v. *Patrick County,* 137 U. S. 141; *National Exchange Bank* v. *Peters,* 144 U. S. 570.)

E. M. Rea, and Francis J. Heney, for Respondent.

The by-law was void as to creditors of the insolvent bank, acting under the Civil Code (sec. 332), in levying an assessment for their benefit. (*Union Savings Bank* v. *Dunlap,* 135

---

[1] 18 Am. St. Rep. 510.     [2] 31 Am. St. Rep. 637.

·Cal. 628; *People's Home Savings Bank* v. *Superior Court,*
104 Cal. 649;[1] *Sullivan* v. *Triunfo etc. Co.,* 29 Cal. 586; *Brew-*
*ster* v. *Hartley,* 37 Cal. 15;[2] *Vermont Marble Co.* v. *Declez*
*Marble Co.,* 135 Cal. 579;[3] *Scoville* v. *Thayer,* 105 U. S. 143;
*Sanger* v. *Upton,* 91 U. S. 56; *Upton* v. *Tribilcock,* 91 U. S.
·45; *Wells* v. *Black,* 117 Cal. 157;[4] Thompson on Corporations,
secs. 1562, 1564, 1566, 1578, 1607; Cook on Corporations, secs.
28, 31, 32, 42, 76.)    The statute cannot run against a call for
unpaid assessments until the call is made.    (*Glenn* v. *Saxton,*
68 Cal. 353; *Hawkins* v. *Glenn,* 131 U. S. 319; *Glenn* v. *Lig-*
*gett,* 135 U. S. 533; *Morgan County* v. *Allen,* 103 U. S. 498;
*Scoville* v. *Thayer,* 105 U. S. 143; *Hatch* v. *Dana,* 101 U. S.
205; *Glenn* v. *Marbury,* 145 U. S. 499; *Glenn* v. *Howard;* 81
Ga. 283;[5] *Glenn* v. *Semple,* 80 Ala. 159;[6] *Vanderwerken* v.
·*Glenn,* 85 Va. 9; *Lehman* v. *Glenn,* 87 Ala. 618; 13 Am. &
Eng. Ency. of Law, 2d ed., p. 721; 1st ed., vol. 23, p. 614.)
The rights vested in the judgment could not be affected by the
repeal of the Bank Commission Act.    (*Bingaman* v. *Robert-*
*son,* 25 Miss. 390; *In re City Bank of Buffalo,* 10 Paige, 378;
*Nevitt* v. *Bank of Port Gibson,* 14 Miss. (6 Smedes & M.) 513;
*Berry* v. *Bellows,* 30 Ark. 198; *Norris* v. *Trustees of Abingdon*
*Academy,* 7 Gill. & J. 7; *Lavender's Lessees* v. *Gosnell,* 43
Md. 154; *Commonwealth* v. *Order of Vesta,* 156 Pa. St. 531.)

ANGELLOTTI, J.—This is in form an action by a banking
corporation to recover from a stockholder the amount of an
assessment levied for an amount unpaid upon the capital
stock for the purpose of satisfying the claims of creditors of
such corporation.    Plaintiff had judgment, and defendant
appeals therefrom upon the judgment-roll.

The findings fully present the facts essential to the deter-
mination of the questions presented by defendant's brief.

The plaintiff corporation ever since March 13, 1899, has
been engaged solely in closing its affairs and liquidating its
indebtedness under a judgment given on that day by the su-
perior court of Santa Clara County, in an action brought by
the attorney-general, in pursuance of notification from the
bank commissioners, who had determined that the plaintiff

---

[1] 43 Am. St. Rep. 147, and note.     [4] 59 Am. St. Rep. 162.
[2] 99 Am. Dec. 237.                    [5] 12 Am. St. Rep. 318.
[3] 87 Am. St. Rep. 143.                [6] 60 Am. Rep. 92.

was insolvent. The proceedings and judgment were had under the provisions of the act creating a board of bank commissioners and prescribing their duties, approved March 30, 1878, as amended in 1887 and 1895. The nature and effect of this amended act have been so fully discussed in comparatively recent opinions of this court as to render further statement in that regard unnecessary. (See *Argues* v. *Union Savings Bank,* 133 Cal. 139; *Bank of National City* v. *Johnston,* 133 Cal. 185; *Union Savings Bank* v. *Dunlap,* 135 Cal. 628.)

Ever since the judgment of the superior court was given the directors of the plaintiff corporation, appointed in the manner provided by the act, have been in the possession and control of the corporation and its assets, for the purpose of closing its affairs and liquidating its indebtedness in accordance with the provisions of said act. The capital stock of such corporation was one million dollars, divided into ten thousand shares of the par value of one hundred dollars each. On this only thirty dollars per share had been paid at the time of the adjudication in insolvency. On May 22, 1899, the directors in liquidation levied an assessment of ten dollars per share, which was collected so far as it could be, this defendant, among others, paying the assessment on his shares. On June 7, 1901, solely for the purpose of satisfying the claims of the creditors of the corporation, and it being necessary to so do in order to satisfy such claims, the directors in liquidation, acting strictly in accord with the provisions of the Civil Code relative to assessments (sec. 331 et seq.), levied the assessment in suit of fifty dollars per share, and the same not having been paid, elected to proceed by suit to recover the amount of the same. (Civ. Code, sec. 349.)

Defendant is the owner of fifty-two shares, upon which only forty dollars per share has been paid, leaving sixty dollars unpaid on the capital stock.

It is of course unnecessary to cite authorities in support of the proposition that unpaid subscriptions upon the capital stock constitute assets of the corporation available to its creditors. In a case arising under the provisions of this banking act, Mr. Justice Temple, speaking for the court, after stating this universally recognized proposition, said: "I have no doubt but that in some form the liquidators may, in case of necessity, resort to this fund." (*Bank of National City* v.

*Johnston,* 133 Cal. 185.)   The question as to whether they could do so by the assessment proceedings provided by the Civil Code was not involved in that case and was not decided therein.   That question was, however, presented and decided in the later case of *Union Savings Bank* v. *Dunlap,* 135 Cal. 628, which was an action brought against a stockholder upon the same assessment that is here involved.   It was there held that the provisions of the Civil Code relative to assessments furnished a mode for the collection of unpaid subscriptions which might be followed.   This was but following the general views announced in prior decisions as to the *status* and powers of the directors in liquidation,—viz., that they are trustees invested with all the powers theretofore possessed by the corporation, so far as the same are appropriate in effecting "an equitable and economical distribution of the assets of the insolvent bank among its creditors," and that they can exercise such powers in the name of the corporation.   They are therefore expressly authorized by the provisions of the Civil Code to levy an assessment for such a percentage of the amount unpaid upon the capital stock as will raise an amount sufficient to satisfy the claims of the creditors of the corporation (Civ. Code, secs. 331, 332) and, so electing to do (Civ. Code, sec. 349), enforce the collection thereof by suit in the name of the corporation.   This much is apparently established by the Dunlap case, and is not seriously disputed by learned counsel for defendant.   The record in this case, however, presents several questions that were not presented in that case.

1. Section 1 of the by-laws of the plaintiff corporation was as follows, viz.:—

"The name of this corporation is and shall be 'Union Savings Bank of San Jose'; the capital stock is and shall be $1,000,000, divided into 10,000 shares of $100 each, 30 per cent of which shall be paid up; no further call for payments upon the capital stock shall be made except by a two-third vote of all stock issued and outstanding."

There has never been any call for the unpaid capital by a "two-third vote" of the stockholders.

It is urged that this by-law is a complete bar to a recovery in this action, the contention being that this action can be maintained only upon the theory of an unpaid subscription which defendant has expressly or impliedly agreed to pay,

and that the by-law shows an express agreement to the effect that in no event shall more than thirty dollars per share be required to be paid by a stockholder, except upon a contingency which has not happened.

It is unnecessary to here discuss the question as to the effect of an agreement of the nature here claimed to have existed between a corporation and its stockholders upon the rights of creditors of the corporation, further than to state that it is universally recognized that when properly attacked, it can generally have no force as against such creditors, and certainly never against creditors without notice. (See *Vermont etc. Co.* v. *Declez etc. Co.*, 135 Cal. 579.[1]) The by-law in question, which, so far as material, simply provided that no further call should be made except by a two-thirds vote of all stock issued and outstanding, must be construed in connection with the provisions of the statute. A corporation has no power to adopt a by-law that is not consistent with the constitution and laws of this state. (Civ. Code, sec. 301; *People's etc. Bank* v. *Superior Court*, 104 Cal. 649.[2]) So far, therefore, as a by-law may be inconsistent with statutory provisions it must yield. Our statutes make full and complete provision for the protection of creditors of a corporation in this behalf, by expressly authorizing the directors thereof to levy and collect an assessment for such percentage of the full amount unpaid upon the capital stock as may be necessary to satisfy the claims of the creditors. (Civ. Code, secs. 331, 332, subd. 1.) This statutory provision, enacted for the protection of creditors, enters into and becomes a part of every contract between the corporation and its stockholders, whether evidenced by by-law or not, and the corporation cannot, without the consent of the creditors, yield up this power by a contract with stockholders. This power of the corporation, as we have already seen, vests in the directors in liquidation, and may be exercised by them in the name of the corporation in the manner prescribed for its exercise by the corporation.

Considered in connection with these statutory provisions, the by-law relied upon as constituting a contract cannot be held to have reference to any *assessment* that might be thereafter levied in accordance with the provisions of the Civil Code relating to the levy and collection of assessments, but

---

[1] 87 Am. St. Rep. 143.   [2] 43 Am. St. Rep. 147, and note.

simply meant that no such call for unpaid capital as might ordinarily, in the absence of a contrary stipulation in the contract of subscription as to the time or manner of payment, be made by the directors by a simple resolution to that effect, would be made, except by a two-thirds vote of the stockholders. An example of this character of case is to be found in *California etc. Co.* v. *Callender,* 94 Cal. 120,[1] where by the contract of subscription the stockholders had expressly agreed to pay the unpaid portion upon demand. Where, however, there is no such express agreement the promise to pay the unpaid capital upon such a call is implied from the taking of the stock, in the absence of an agreement to the contrary.

Here there was such a contrary agreement, and consequently *such a call* could be made only by a two-thirds vote of the stockholders. But, by virtue of the provisions of the Civil Code relative to assessments, which entered into and became a part of the subscriber's contract with the corporation, the corporation had the power, acting through the board of directors, after one fourth of its capital stock had been subscribed, to levy and collect *assessments* for the various purposes specified in the code, including the power to levy and collect an assessment for the full amount unpaid upon the capital stock, if such amount was necessary to satisfy the claims of creditors of the corporation, or for such percentage thereof as was necessary for that purpose, and this power, so far as amounts unpaid upon the capital stock and necessary to satisfy the claims of the creditors are concerned, was vested in the directors in liquidation.

2. Certain provisions of the Code of Civil Procedure prescribing limitations as to the time within which actions may be commenced were pleaded in bar of this action,—viz., subdivisions 1 and 4 of section 338, subdivision 1 of section 339, and section 359. The trial court expressly found, in terms, that the action was not barred by any of these provisions, but at the same time specifically found the facts from which these general findings were deduced, and it is conceded that the question as to whether these specific findings show a case not barred by the statutory provisions invoked is properly before this court for review.

---

[1] 28 Am. St. Rep. 99.

This action was commenced on April 2, 1902. The assessment in suit was levied on June 7, 1901, and the election to proceed by action to recover the amount thereof was made on July 12, 1901. Whether the liability of a stockholder to pay an assessment on stock on account of unpaid capital be a liability created by statute within the meaning of subdivision 1 of section 338 of the Code of Civil Procedure, or a liability created by law within the meaning of section 359 of the Code of Civil Procedure, and the limitation thereof three years, or is a liability arising from contract, within the meaning of subdivision 1 of section 339 of the Code of Civil Procedure, and the limitation, therefore, two years, it will be seen that this action was brought within the statutory time after the levy of the assessment here involved.

But the decree of the superior court determining plaintiff corporation to be insolvent, restraining it from further carrying on business, and requiring the bank commissioners to surrender the property of the corporation to the directors thereof for the purpose of liquidation, was made on March 13, 1899, more than three years prior to the commencement of this action.

It is urged that the liability of the stockholder in this case rested upon his implied contract to pay calls made for unpaid subscriptions, and was purely a liability arising upon a contract not in writing, and that the statute requiring actions on such contract to be brought within two years after the cause of action accrues is applicable. It is further urged that while such a cause of action would ordinarily accrue only upon a call made by the directors of the corporation for the unpaid capital, when the corporation was decreed to be insolvent and put into process of liquidation by the superior court, the liability of the stockholders to pay so much of the unpaid capital as was necessary to satisfy the claims of creditors at once became fixed, and the cause of action therefor accrued, and became barred upon the expiration of two years. Upon the general question as to whether in the event of the insolvency of a corporation and its ceasing to be a going concern a cause of action for unpaid capital payable upon call accrues *immediately* upon insolvency, without any call therefor having been made. there is, it must be conceded, some conflict in the opinions of the federal and state courts that have had

occasion to discuss the proposition. There has, however, been no expression of opinion by this court thereon, except in the case of *Glenn* v. *Saxton,* 68 Cal. 358, which was an action upon what was called an assessment for unpaid capital for the purpose of paying debts, levied upon stock of an insolvent corporation by a Virginia court. The law of Virginia, the state wherein the corporation was organized, provided that a portion of the capital should be paid at the time of subscription, "and the residue thereof as required by the president and directors," and that if the same was not paid as required it might be recovered by action. It was held by this court, quoting from and adopting and assenting to the views of the court of appeals of Maryland in *Glenn* v. *Williams,* 60 Md. 93, 122, that the terms of the statute became a part of the contract of subscription; that the subscriber undertook to pay the residue as required by the president and directors; that the call made by the court was the same, in effect, as if it had been made by such president and directors, and that when made, the contract of the defendant to pay became absolute, and the cause of action accrued. In the portion of the opinion of the Maryland court quoted in *Glenn* v. *Saxton,* and as to which this court said, "In this we entirely agree," is the following, viz.: "After the payment of the two dollars per share, there was nothing due from the subscriber to stock until an authorized call was made for the residue. The contract contemplated the exercise of judgment and discretion on the part of the president and directors as to the times and amounts of future payments on the stock, and there was nothing due from the stockholders until such amounts were determined on and regularly called for. Until a regular call made, there was no unconditional liability on the part of the stockholder to pay. Until then he could not know when to pay or how much he would be required to pay. The subscription, therefore, was conditional, as to the times and amounts of payment; and consequently, there was no fixed obligation of the stockholder to pay, and no right of action against him, until an assessment and call made, either by the president and directors, or by the order of a court of competent jurisdiction. It is for the amount of the assessment made that the right of action accrues, and not for the whole balance of the unpaid subscription, unless the whole amount be called for; and it is

only from the time of the assessment and call made that the statute [of limitations] runs in favor of the defendant." There is nothing opposed to these views in any California case that has been brought to our attention. *Kohler* v. *Agassiz*, 99 Cal. 9, specially relied upon by defendant, was a case decided upon the peculiar language of the contract of subscription, whereby the defendant had agreed to pay "*in such installments and at such times* as said defendant might under and according to the laws of the said state of California be lawfully called upon and required by said corporation to pay the same," and it was pointed out in the opinion in that case, the question being as to whether the action had been prematurely brought, that this provision did not say anything about the manner in which the corporation should call upon the subscribers. Whether the distinction made by the court in that case was well founded or not is immaterial here, for clearly it was not intended therein to hold that a cause of action for money due only on proper call could accrue before such call was made. The rule stated in *Glenn* v. *Saxton*, 68 Cal. 358, is concededly the rule of the United States supreme court and the appellate courts of several of the states. As to banking corporations in process of liquidation under the provisions of the Banking Act of 1887, as amended in 1895, and the provisions of our code, we have no doubt that it is the true rule, at least so far as assessments levied under the provisions of the Civil Code for such amount of the unpaid capital as may be necessary to satisfy the claims of creditors are concerned. The reasoning of the Maryland court approved by this court in *Glenn* v. *Saxton*, 68 Cal. 358, is peculiarly applicable to such case. As was pointed out in *Union Savings Bank* v. *Dunlap*, 135 Cal. 628, such a corporation, after a decree adjudging it insolvent, while restrained from continuing the banking business, continues to be a corporation until its affairs are closed, and is a going concern for all purposes of liquidation. Subject to certain rights in the court as to the removal and appointment of directors, the management of the affairs of the corporation in liquidation is in the hands of the directors of such corporation, under the direction of the bank commission. These directors are invested with all the powers of the corporation, so far as the same are essential to liquidation, including the power to assess the

stock, so far as is necessary to satisfy the claims of creditors, to the full amount unpaid upon the par value thereof, and collect the amount from the stockholder. The obligation of the stockholder as to this unpaid capital is not to pay the whole amount thereof in any event, but only to pay such portion thereof as such directors, in the management of the affairs of the corporation, may find necessary to satisfy the claims of creditors, and call for in such mode as may be required by the law. Such an obligation involves, as was said in the Maryland case, the exercise of judgment and discretion on the part of the directors as to the times and amounts of payments on account of unpaid capital, and there can be no amount actually due until the amounts are determined on and regularly called for. The directors in the exercise of the powers confided to them are acting not only in the interest of the creditors, but also in the interest of the stockholders, and the act provided a summary process by which the court might remove any director found by it to have been guilty of fraud or negligence, and not a proper person "to be intrusted with the closing of the affairs and business of such corporation *in the interest of the depositors, creditors, and stockholders thereof.*" This provision apparently afforded full remedy to any stockholder who might be aggrieved by any unnecessary delay on the part of the directors in determining upon and calling for such amount of the unpaid capital as might be necessary. The act further provided that the affairs of such a corporation must be closed within four years, unless further time was allowed by the bank commissioners.

We are unable to see how it can be held, under our statutory provisions, that the power of the directors to levy the assessments mentioned in subdivision 1 of section 332 of the Civil Code can be impaired by lapse of time, so long as the corporation is a going concern for purposes of liquidation, or how any provision of our statute of limitations can commence to run as to the amount of any such assessment until the levy thereof.

Much reliance is placed by learned counsel for defendant upon expressions of this court in the opinion in *Harrigan v. Home Life Ins. Co.*, 128 Cal. 531, in support of their contention, that it was within the power of the directors in liqui-

dation to make the demand for the unpaid capital at any time; that it should have been made immediately upon the adjudication of insolvency; and that the statute commenced to run from the time the call might have been made, whether it was made or not. The case cited was an action upon a life-insurance policy, where the covenant of the insurer was to pay "after due notice and satisfactory proof of death," etc., which covenant, this court said, practically called for a demand only, and the well-settled rule that, where a right or claim has fully accrued except for some demand or presentation of claim to be made by the party as a condition precedent to legal relief, which such party can at any time make, if he so chooses, the cause of action has accrued for the purpose of the statute of limitations, was applied. (See, also, *Barnes* v. *Glide*, 117 Cal. 8;[1] *San Luis Obispo County* v. *Gage*, 139 Cal. 408.) We are unable to see the application of this rule to an assessment levied under the provisions of the Civil Code. As we view the law of this state upon the subject, the legislature has seen fit to invest the directors in liquidation with the power to inaugurate assessment proceedings to the extent of such amount unpaid upon the capital as they may find necessary for the payment of creditors at any time during the process of liquidation. The matter is one entirely within their discretion, and until the levy of the assessment there is no liability of any kind on the part of the stockholder in regard thereto other than the liability, inseparably connected in this state with the holding of stock in corporations, of being assessed thereon. The levy of the assessment is essential to the creation of the liability which is here sought to be enforced.

Of course, this court did not by merely citing in the opinion in *Harrigan* v. *Home etc. Co.*, 128 Cal. 531, the case of *Great Western Tel. Co.* v. *Purdy*, 83 Iowa, 430, in support of the rule applied, adopt the views of the Iowa court as to the application of that rule to the facts of that case.

It perhaps should be stated that the trial court found that it was impossible for the board of directors prior to the first day of March, 1901, to determine with any degree of certainty the value of the assets of the bank, or readily or correctly value the same, but that they might readily have ascertained

---

[1] 59 Am. St. Rep. 153.

at the outset that there was a deficiency of at least two hundred thousand dollars.

Some reliance is placed by defendant upon the fact that on October 27, 1899, the directors in liquidation did by resolution order and levy an assessment of sixty dollars per share, and give notice thereof by mail to this defendant. No further proceeding appears to have been taken thereon. On January 26, 1901, this resolution was by another resolution of the directors declared rescinded, vacated, and set aside, and the right to collect the same waived. Nothing was ever paid thereon by any stockholder. It is urged that the statute of limitations commenced to run in favor of defendant at the date of this levy, if it had not commenced before. As to that assessment, it may be conceded that this contention is well founded. But the assessment not being paid, the amount theretofore unpaid upon the capital stock still remained unpaid, and the power of the directors in liquidation to levy assessments under subdivision 1 of section 332 of the Civil Code was not exhausted. If the board of directors had the power to levy another assessment, as it clearly did under our views as to the law, the statute of limitations as to such new assessment did not commence to run prior to such levy.

On January 26, 1901, the directors again adopted a resolution levying an assessment of sixty dollars per share, which resolution was rescinded on June 7, 1901. There was never any attempt to enforce this assessment. This resolution is entirely immaterial to the controversy as to the statute of limitations, for this action was commenced within two years thereafter, but what has been said as to the resolution of October 27, 1899, is also applicable to this. Defendant's claim as to the statute of limitations is based upon the theory that the liability of the stockhalder finds no support in the statute, but comes entirely, if at all, from his implied promise to pay upon call. When it is once established that there also existed an implied promise on his part, imported into his contract by reason of the provisions of our statute, to pay such assessments as might from time to time be levied by the directors in the manner provided by law to meet the claims of the creditors of the corporation, up to the full amount of the unpaid capital, if necessary, the force of his argument is much impaired.

There is much force in the argument that the directors should be required to move promptly in the closing up of the affairs of the bank, both on account of the interests of the creditors and those of the stockholders, but, as we have attempted to show, the remedy for any party desirous of such speedy adjustment is in his own hands. We are satisfied that the trial court was correct in the conclusions reached upon the defense of the statute of limitations.

3. We do not understand it to be contended that payments made by defendant to creditors of the plaintiff, upon judgments obtained against him by such creditors, upon defendant's liability to them under section 322 of the Civil Code, can be considered as payments made upon the capital stock. The law would not sustain such a contention.

4. On March 2, 1903, which was nearly a year after this action was commenced, but prior to judgment, the Bank Commission Act of 1878, as amended in 1887 and 1895, was repealed by an act of the legislature, which act contained no saving clause as to any pending litigation. (Stats. 1903, p. 73.)

It is urged that the effect of this repeal was to destroy the cause of action sued on and abate this action.

We are satisfied that the repeal of this act could not affect the judgment theretofore given in pursuance of its provisions, decreeing the plaintiff corporation insolvent, and requiring it to proceed, under the management of its directors, to close up its affairs and liquidate its indebtedness. The judgment had become final, and had fixed the rights of all parties interested. Thenceforth the directors of the corporation were trustees, charged by the judgment with the performance of such duties as were essential to a closing of the affairs of the corporation in the interests of the creditors and stockholders, and invested by the judgment with all the powers of the corporation necessary therefor. It is true that the Bank Commission Act gave the bank commissioners certain supervisory authority over them, but their *status* as trustees, having all the powers conferred by law upon directors of corporations so far as such powers were necessary to liquidation, was fixed by the judgment.

As such trustees, they levied the assessment in suit, and are proceeding to collect the same by action, not acting under any

authority conferred by the Bank Commission Act, but as
directors of the corporation, under authority conferred by
certain provisions of the Civil Code relative to corporations,
which provisions have not been amended or repealed since the
levy. If the right to levy this assessment had been given by
the act that has been repealed, or if the effect of the repeal
of such act had been to remove the directors from the office of
trustee, a case would be presented which might call for the
application of the authorities cited by counsel for defendant.
It may be suggested that if it be conceded that the repealing
act has the sweeping effect of annulling all that has been done
under the act repealed, relative to plaintiff, the judgment of
the superior court decreeing it insolvent would fall with the
rest, and we would have the plaintiff corporation a going con-
cern for all purposes, with all the powers of a going concern,
including the power to levy and collect this assessment to
satisfy the claims of its creditors, notwithstanding the by-law
relied on.

We are then forced to the conclusion that if the repeal did
not affect the judgment of the superior court the power of
the directors to collect the assessment levied under the pro-
visions of the Civil Code was not impaired by such repeal;
and if, on the other hand, such repeal did operate to vacate
said judgment and all proceedings had under the act, the
corporation continued a going concern, with the power to levy
and collect the assessment in suit.

As already stated, however, we are satisfied that such repeal
did not affect the judgment of the superior court.

This disposes of all the points made by defendant on this
appeal.

The judgment is affirmed.

Van Dyke, J., and Shaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment
and generally in the opinion of the court. As to the effect of
the call or assessment of October 27, 1899, if a cause of action
had accrued to the corporation by reason of the call alone, I
think the statute of limitations would have commenced run-
ning at the date of delinquency fixed by the resolution, and
if it had once commenced running I do not think the subse-
quent rescission of the call would have extended the time for

commencing the action. But it requires something more than a mere call to establish a right of action under the statute. The call must be followed by a resolution to proceed by action regularly adopted after the assessments have become delinquent. Until the adoption of such a resolution no stockholder can be sued. This was the point, and the only point decided, in *Bank of National City* v. *Johnston,* 133 Cal. 185, as will more clearly appear from the Department decision reported in 60 Pac. 776, where the facts are more clearly stated. Until the resolution to proceed by action is adopted the whole matter remains, as it was before, in the discretion of the trustees, and they may either rescind the first call and afterwards adopt another, or complete their right of action under the first call by resolving to enforce it by that method.

It may be added that if the statute had been set in motion at the date of the first call in October, 1899, the action was not barred by subdivision 1 of section 338 of the Code of Civil Procedure, and it is by no means clear that this is not an action upon a statutory liability within the meaning of that section.

Besides what is said in the opinion of the court in regard to the effect of the repeal of the Bank Commission Act, I am of the opinion that it was beyond the power of the legislature by the repeal of that act to destroy the only remedy available to the creditors of the corporation for the enforcement of their contract rights.

Henshaw, J., concurred.

Rehearing denied.