[Civ. No. 3033.    Second Appellate District, Division Two.—December 19, 1919.]

## THE GAMEWELL FIRE ALARM TELEGRAPH COMPANY (a Corporation), Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] MUNICIPAL CORPORATIONS—PURCHASE OF SUPPLIES AND MATERIALS—NONCOMPLIANCE WITH CHARTER PROVISIONS.—Where a municipal charter provides that there can be no contract or order for supplies, for an amount in excess of a given sum, unless two-thirds of the city council shall vote in favor thereof, and further, that such vote shall be entered on the minutes, notice inviting proposals published, the contract let to the lowest bidder, etc., an attempted purchase of fire-alarm and police telephone apparatus and material for an amount in excess of such given sum, without complying with the provisions of the charter relating to the making of such a purchase, is void.

[2] ID.—LIMITATION OF POWER TO CONTRACT—ESTOPPEL—RATIFICATION.—Where the power of a municipality to contract is thus limited by its charter, liability cannot arise by estoppel or ratification.

---

1. Rights and remedies where contracts of municipal corporations are invalid, note, L. R. A. 1915A, 904.

2. Ratification of invalid contracts of public corporations, note, L. R. A. 1915A, 1023.

[3] ID. — NONCOMPLIANCE WITH CHARTER — RECOVERY ON QUANTUM MERUIT.—Where a municipal charter prescribes the procedure to be followed in making certain purchases, and provides that the city shall not be bound by any contract unless such procedure is followed, but such procedure is not followed, recovery cannot be had on a *quantum meruit.*

[4] ID.—INVALIDITY OF ATTEMPTED PURCHASE—VENDOR CHARGED WITH NOTICE—DUTY TO DEMAND RETURN.—The vendor, in such case, is charged with notice that there has been no valid sale or contract for sale, that there can be no establishment of a claim against the city by ratification, estoppel, or laches of its officers, and that it consigned its property to the possession of a party under conditions which would confer title by adverse possession, or bar relief by the running of the statute of limitations, and, therefore, it is clearly its duty to make demand for a return of possession of such property at least within the statutory period.

[5] ID.—DELAY IN COMMENCING SUIT—LACHES—STATUTE OF LIMITATIONS.—Where the provisions of a municipal charter relating to the making of purchases are not complied with, but demand for the return of the property is not made until over three years after complete delivery, and suit to recover the property is not begun until over two and one-half years after such demand, such delay is shown as to justify the court in finding that the action is barred by laches, and that the statute of limitations had run before the suit was begun.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank M. Parcells and Goudge, Robinson & Hughes for Appellant.

Albert Lee Stephens, City Attorney, Charles S. Burnell, Assistant City Attorney, and William D. Spalding, Deputy City Attorney, for Respondent.

SLOANE, J.—Plaintiff, The Gamewell Fire Alarm Telegraph Company, a corporation, engaged in the business of manufacturing and selling apparatus and appliances for police and fire-alarm electric systems, brought this action in replevin on August 25, 1913, against the city of Los Angeles, to recover an equipment of fire-alarm and police telephone apparatus and material, which it had furnished,

and which was installed for the use of the fire and police departments of the city in the year 1907. This apparatus came into the possession of the defendant, the city of Los Angeles, under the following circumstances:

The plaintiff company received a written communication from one F. W. Frankhauser, signing himself as superintendent of the "Bureau of Fire Alarm and Police Telegraph" for the city of Los Angeles, stating that the city was intending to make extension of its fire-alarm and police telegraph system, and requesting prices and terms of delivery of the necessary equipment. Plaintiff responded by sending a written list of the various articles comprising the usual equipment, with itemized prices at which it offered to furnish any of the articles that might be required, with the proviso that "the ownership of all the apparatus and material specified herein shall remain with The Gamewell Fire Alarm Telegraph Company until all payments shall have been made in accordance with these terms; also in the event of any payment not being made in accordance with said terms, the Gamewell Fire Alarm Telegraph Company, after due notice of default, shall have the power to remove any and all of said apparatus and materials." To this written offer F. W. Frankhauser, purporting to represent the fire and police departments of the city of Los Angeles, responded by letter acknowledging receipt of the proposal in the following language: "I beg herewith to acknowledge the receipt of yours of September 6th, quoting us prices and terms on fire alarm and police telegraph apparatus, which is satisfactory." Thereafter, beginning with January, 1907, requisitions were made and orders forwarded to the plaintiff company from time to time for the apparatus thereafter delivered and installed. The requisitions and orders comprised an application by the "Bureau of Fire Alarm and Police Telegraph" department to the city council for authority to purchase certain apparatus, approval by the supply committee, orders upon the plaintiff company to furnish the supplies indicated—signed by the council committee clerk—approval of the orders by the chief and secretary of the bureau of fire-alarm and police telegraph, acknowledgment of receipt by F. W. Frankhauser of the materials ordered, certificate to correctness of the bills by council committee clerk, and approval of the bills for the

goods furnished by the city council. Without following the details of the transaction, it is sufficient to say that the respective orders passed through the various departments of the city government in a manner that would be binding upon a party with ordinary contractual powers. Ultimately, however, after full delivery had been made, the city auditor held up the bills presented by the plaintiff company on the ground that the attempted purchase by the city was in violation of the city charter, *ultra vires,* and void, and payment was finally refused.

The materials furnished under this transaction consisted of seventy police signal-boxes at $150 each, an automatic storage battery at $495, a police desk table with switchboard instruments and attachments at $2,354, and various other articles, aggregating the value of $14,859.45. The record discloses that of these goods, articles to the amount of $10,636.60 were delivered on May 20, 1907, and to the amount of $3,030 on April 30, 1907.

The validity of the transaction was called in question by the city auditor as early as June 5, 1907, by his return of the bills therefor to the city council without his approval and with his protest that the transaction was in violation of the city charter and void. The council at this time overruled the auditor's objections and approved the claims. Payments, however, were withheld, and the legality thereof was under dispute thereafter until about December 21, 1909, when the council rejected all of the plaintiff company's demands. On March 1, 1910, the plaintiff company, in a communication to the city council, called attention to its unpaid demands, and asked to be given another hearing. On September 20, 1910, the city council attempted, in part, to reconsider its rejection of the claims, and ordered $3,871.70 of the amount paid; but as we understand the record, no payment was made. On May 16, 1911, a demand for possession of the articles involved in the transaction was served by plaintiff upon the city council, and thereafter, on August 25, 1913, this action to recover possession of the property was begun. Judgment was for the defendant.

Respondent claims that the judgment must be upheld on the ground that the attempted contract was void, the city's possession of the goods without right, and that plaintiff's cause of action accrued without demand; and further, that

the action, having been commenced six or seven years after possession was taken, is barred by the statute of limitations, and that even if a demand were necessary to put the statute in motion, plaintiff failed to make such a demand within a reasonable period, and that the statute of limitations had run after the expiration of such reasonable period and before action was commenced. In order to determine the rights and obligations of plaintiff in the matter of demanding possession and bringing action for the recovery of this property, it becomes necessary to determine the nature of the city's possession and the validity of the alleged contract of sale to the city.

During all this period the charter of the city of Los Angeles provided that there could be no contract or order for supplies, or other act involving the payment of money or incurring of any debt by the city, for an amount in excess of five hundred dollars, unless two-thirds of the city council should vote in favor thereof; that such vote should be entered on the minutes, notice inviting proposals published in the daily papers, the contract let to the lowest bidder, the contract evidenced in writing, approval by the city attorney indorsed on the contract, the draft of the contract approved by the city council, and contract signed by the mayor or some other person authorized by resolution. The charter specifically provided that the city should not be bound by any contract unless these things were done. An exception was made in the case of contracts for purchases involving not to exceed five hundred dollars; but even in such cases a resolution of the council was required authorizing some officer, committee, or agent of the city to act in the matter, such resolution requiring the favorable vote of two-thirds of the members of the council.

[1] So far as concerns this attempted purchase, considered as a single contract we must unquestionably treat it as void. The court so found, and the evidence is conclusive upon such finding. There is no serious pretense that there was any attempt to comply with the requirements of the city charter for making such a purchase. In the first place, no bids were advertised for or received. There was no formal written contract. Even if authority to make a contract existed in those purporting to represent the city of Los Angeles in obtaining and accepting the proffered prices

and terms of the plaintiff company, the writings which passed between them would not have constituted such a contract as the city charter directs. They might have constituted a sufficient memorandum in writing to cover the statute of frauds, if that had been involved; but in their form or execution they in no essential conformed to the charter requirements. It is equally evident that there was no authorization, as prescribed by the charter, for anyone to enter into such a contract. We think this point so clearly obvious that it is unnecessary to more than call attention to a few of the numerous authorities of our own courts dealing with such charter limitations upon the power of a municipality to make contracts and assume liabilities. (*McCoy* v. *Briant,* 53 Cal. 247; *Santa Cruz R. P. Co.* v. *Broderick,* 113 Cal. 628, [45 Pac. 863]; *Frick* v. *City of Los Angeles,* 115 Cal. 512, [47 Pac. 250]; *Shaw* v. *San Francisco,* 13 Cal. App. 547, [110 Pac. 149]; *Zottman* v. *San Francisco,* 20 Cal. 97, [81 Am. Dec. 96]; *Foxen* v. *City of Santa Barbara,* 166 Cal. 77, [134 Pac. 1142].) [2] It is equally clear, on the same authorities, that where the power to contract is thus limited, liability cannot arise by estoppel or ratification.

[3] Nor can recovery be had in such a case as this on a *quantum meruit.* Such a result would in effect nullify the protection intended to be afforded by the restrictions of the charter, by permitting liabilities to be created indirectly under conditions which are prohibited by express agreement. Counsel for appellant, in fact, in their closing brief, abandon any right to recovery by virtue of an implied contract; in the event their claim of a valid express contract is not maintained, accepting the doctrine of *Zottman* v. *San Francisco, supra,* and *Reams* v. *Cooley,* 171 Cal. 150, [Ann. Cas. 1917A, 1260, 152 Pac. 293.] They argue, however, that the charter requirement for advertising for bids could not apply in this case because of the fact that the goods and appliances were patented articles of which plaintiff had a monopoly, that they could not be acquired by competitive bidding, and that, as the court found, the prices agreed upon were no more than the reasonable value of the goods. If this contention could be maintained, it would not excuse the failure to comply with the other charter requirements for entering into a contract, which were ignored in this case. It is,

moreover, a matter of dispute, under the evidence, that the requirements of the city could not have been met from other sources; and the findings of the court are against appellant's contention.

The question next arises as to whether the validity of all or part of the transaction can be upheld as a series of independent purchases, each in an amount less than five hundred dollars. The trial court found on this point that the pretended purchase and sale was intended by all parties thereto to be a purchase of supplies and materials in an amount exceeding in the aggregate five hundred dollars, to wit, over fourteen thousand dollars; that the purchase of all of the supplies and materials, excepting articles not exceeding twenty dollars in value, was intended as a single purchase, and that the orders in installments, amounting to less than five hundred dollars each, were so split up "for the express purpose of evading the law and the provisions of the charter of the city of Los Angeles," and "for the purpose of preventing competition." We think the evidence supports the finding, at least as to an intent to evade the law, whatever the purpose. Even plaintiff's complaint bears out the finding that the transaction was intended, between the parties, as a single purchase. It is alleged in paragraph III of the complaint that on or about the sixth day of September, plaintiff offered in writing to furnish defendant certain fire-alarm and police telegraph apparatus, the same to be delivered to defendant by plaintiff at the city of Los Angeles at the prices named in said writing, and subject to the terms, conditions, and provisions thereof; that said offer was made by plaintiff at the special instance and request of defendant; that thereafter defendant acknowledged in writing the receipt of plaintiff's written order, and notified plaintiff that the prices quoted and terms given were satisfactory; that thereafter, in pursuance of said written offer, and not otherwise, defendant ordered of plaintiff all of the material and apparatus; and that plaintiff delivered the same, with the exception of a few small items, during the months from January, 1907, to December, 1907. The entire transaction is treated by plaintiff as a single contract, and, indeed, plaintiff still insists that it was a single, binding, and enforceable contract.

The letter from the superintendent of the Bureau of Fire Alarm and Police Telegraph of Los Angeles, which opened negotiations, announced the intention of the city to make extensions to the fire-alarm and police telegraph systems, and asked for prices so that they could make up their estimate. That the orders were actually made in a manner to show intent to evade the law as to purchases above five hundred dollars, is shown by the schedule placed in evidence. The seventy police boxes at $150 each were ordered two or three at a time, thus aggregating three hundred dollars or $450 for each order. Such orders were sent in separately on numerous successive days, and, finally, on December 10, 1906, eighteen separate orders, for three police boxes each, are shown, with two orders on December 12th, one for three boxes and the other for two —thus making up the entire seventy. Another series of items went to make up what is referred to as the "police desk equipment." This consisted of numerous parts and equipments, aggregating a cost of $2,354. These were split up into orders for articles which, for the most part, would have been useless by themselves, each of which orders approximated something less than five hundred dollars. The very fact that these orders were made in this manner on the part of the city officials, and so filled by the plaintiff company, is sufficient evidence that both parties were aware of an attempt to split up the purchase into separate amounts of less than five hundred dollars each. There were a few items which by themselves give no indication that they were not separate and independent purchases for less than five hundred dollars, but they were part of the whole equipment, and the entire purchase was tainted with the same purpose to evade the law. As separate purchases, under five hundred dollars, these transactions were not had in compliance with the charter; but it is quite possible that the manner in which these various requisitions went through the departments of the city government, with the knowledge and acquiescence of the city officers, might have created a binding obligation on the city to pay for them if they had been *bona fide* purchases within the five hundred dollar limit. But, as the court found, they were not *bona fide* separate purchases, but part of a single, unlawful, and unauthorized contract; and as the finding has sufficient sup-

port in the evidence, the plaintiff can base no claim upon this phase of the transaction. The alleged contractual relations in this matter between the plaintiff corporation and the city of Los Angeles were void, and neither party acquired any rights thereby. In fact, it may be said that the city, as a municipal corporation, was not a party to the transaction at all, the acts of its officers in the matter being without authority, and *ultra vires.*

This brings us to the question of the right of plaintiff to a recovery of the property itself. The bar of the statute of limitations and laches in making demand for return of the property was pleaded, and by the court sustained. It is respondent's contention that the possession of the goods by the city was wrongful from the beginning; that plaintiff's right of action at once accrued, without demand; that if a demand was necessary it could have been made at any time; and that unless made within a reasonable time, not exceeding the period of the statute of limitations, the action would be barred by such laches.

The goods were all delivered by the last of December, 1907. No demand for their return was made until May 16, 1911, over three years later, and suit was not begun until August 25, 1913, two and a half years after demand. The period of the statute of limitations applicable is three years, under subdivision 3 of section 338 of the Code of Civil Procedure. If the attempted contract, with reservation of title and right to recover possession on failure to make payment, had any validity, or even if the contract had been merely voidable or subject to subsequent ratification by the city of Los Angeles, plaintiff might have been entitled to defer his election to recover the property until the conclusion of the protracted controversy over these claims and their rejection by the city council, which was not until December, 1909, and perhaps not finally until March 1, 1910. Under such conditions, demand and suit would have been in time. But this contract was void, and, perhaps, fraudulent. The delivery of this equipment and apparatus by plaintiff was voluntary and without consideration, and the city acquired no title or right of possession thereunder. The possession, as against the plaintiff, was perhaps not wrongful, and we are not prepared to say that a demand was not necessary before bringing suit; but

such demand could have been made at any time after delivery was made. [4] Plaintiff was charged with knowledge that there had been no valid sale or contract for sale, and that there could be no establishment of a claim against the city by ratification, estoppel, or laches of its officers. There was no occasion to await developments. At best, plaintiff's expectations could only have been to "put over" an illegal and unauthorized settlement.

It was not such a case as was involved in *Strauss* v. *Schwab*, 104 Ala. 669, [16 South. 692], cited by appellant, or such as would arise in any transaction with a natural person, or even with a corporation having general powers to contract and therefore to ratify. The plaintiff, from the beginning, was charged with notice that it was consigning its property to the possession of a party under conditions which would confer title by adverse possession, or bar relief by the running of the statute of limitations. It was clearly its duty to make demand for a return of possession at least within the statutory period. This is particularly true in a case like this, where the demand was not a condition precedent to the right to a return of the property, but merely a preliminary requirement to bringing suit. A distinction may well be made, as is recognized by many decisions of the courts, in this respect. In *Wittman* v. *Board of Police Commrs.*, 19 Cal. App. 229, [125 Pac. 265], it is said: "These considerations bring the case within the rule followed and recognized in many cases, that where a right has fully accrued except for some demand to be made as a condition precedent to legal relief, which the claimant can at any time make, if he so chooses, the cause of action has accrued for the purpose of setting the statute of limitations running. (*Palmer* v. *Palmer*, 36 Mich. 487, [24 Am. Rep. 605]; *Harrigan* v. *Home Life Co.*, 128 Cal. 531, 548, [58 Pac. 180, 61 Pac. 99]; *Union Sav. Bank of San Jose* v. *Leiter*, 145 Cal. 696, [79 Pac. 441]; *San Luis Obispo* v. *Gage*, 139 Cal. 398, [73 Pac. 174]; *Barnes* v. *Glide*, 117 Cal. 1, [59 Am. St. Rep. 153, 48 Pac. 804].)"

[5] Assuming, without deciding, that a demand was necessary before bringing suit, and that there was no such participation in an attempted fraud upon the city as would bar the plaintiff corporation from any recovery, we are satisfied that there was shown such a delay in making demand

and commencing suit as to justify the finding of the court of such laches, and that the statute of limitations had run before suit was begun. In fact, as to all but a few hundred dollars in value of the items, over six years had run from the date of delivery before suit was commenced.

It presents hard lines for appellant here that the city of Los Angeles should not only escape liability to pay for this police and fire equipment, of which it has had the use and benefit, but be permitted to retain the goods. We would be disposed to hold with the trial court that plaintiff would be entitled to recover possession, but for its laches in delaying action. It may be borne in mind, however, that the city, as a municipality, was at no time a party to this transaction. Its officers were acting outside of the scope of their authority in taking over this property. The city, as such, is not a participant in this illegal deal. The charter provisions which prohibited the purchase as attempted was made for the benefit of the municipal public, and there is no reason for scruple in enforcing full protection of the law, as might have existed had the officials themselves been the defendants.

The judgment is affirmed.

Finlayson, P. J., and Thomas, J., concurred.