[Civ. No. 9182.   Second Appellate District, Division Two.—April 29, 1935.]

THOMAS KELLY & SONS, INC. (a Corporation), Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Fredcrick von Schrader, Assistant City Attorney, and Grant B. Cooper ·and D. M. Kitzmiller, Deputies City Attorney, for Appellant.

O'Melveny, Tuller & Myers, Pierce Works, Albert Parker and Karl B. Rodi for Respondent.

SCOTT, J., *pro tem.*—Plaintiff recovered judgment for work done in connection with construction of a bridge across Los Angeles River on Los Feliz Boulevard. Defendant appeals.

A contract had been entered into between the parties in October, 1924, pursuant to a bid submitted by plaintiff. The plans and specifications showed that the bridge was ·to rest upon concrete piers which in turn were to rest upon pilings. When excavation was started a rock formation was encountered in the river bottom, but plaintiff went ahead and completed the bridge. Defendant paid plaintiff the sum of $11,670.52 in addition to the total value of the regular contract as completed, which was in the sum of $135,099.73. Plaintiff then brought this suit to recover a further amount which it is claimed was still due by reason of the extra work involved because of the said rock formation, and was awarded judgment for $11,835.94.

In response to issues raised by an amended complaint the trial court found "that in and by said plans and specifications said bridge is shown as resting upon concrete piers which in turn rest upon pilings, twenty feet in length and

of the number and location shown on said plans. That said plans imported to the plaintiff and to any and all bidders that said concrete piers were to be constructed on pilings because the soil underneath said bridge was of sand or other soft unstable substance which would not support the piers, and that said plans further imported that the soil underneath the piers to be erected for said bridge was of sand, mud, silt or other unstable substances. That plaintiff caused the site of said bridge to be examined before making its bid but that such examination gave no indication of the existence of shale and rock thereunder.'' It further found that plantiff put in a lower bid in reliance on the plans, ''that said plans constituted a representation that the soil to be excavated was of sand, mud, silt or other soft and unstable substances, and that this representation was not true in fact''; that plaintiff did encounter the rock and shale which was more expensive to remove; that by reason of the representation in the plans and its reliance thereon plaintiff had made no allowance for the removal of such harder substances; that the consideration which defendant had agreed to pay did not comprehend or contemplate any com-pensation for such excavation through rock and shale, and that plaintiff went ahead relying on written and oral approval of one Rock, inspector of public works (who approved the additional sum already paid) and of the city engineer, who approved a somewhat higher figure for the extra work.

Reference is made to a term of the contract providing that ''extra work will be paid for at actual necessary cost, as determined by the engineer, whose determination shall be final, plus 15 per cent, for the rent of the contractor's plant, profit, superintendence and general expense''. Among the ''general provisions'' which were part of the contract were the following: ''Sec. 6. No information derived from the map, plans, specifications, profiles or drawings or from the engineer or his assistants will in any way relieve the contractor from any risk, or from properly fulfilling all the terms of the contract. . . . Sec. 37. Excavation and Backfill: The contractor shall make sufficient excavations to permit footings, piers, walls and abutments to be constructed in accordance with the plans and specifications. Such excavations shall include the removal of all water and other materials or obstructions of whatever nature encountered.'' Among ''Instructions to Bidders'' it was provided: ''Personal Examina-

tion: Bidders are requested to carefully examine the plans and read the specifications, and are required to personally satisfy themselves as to all local conditions affecting the work. The accuracy of the interpretation of facts disclosed by borings or other preliminary investigations is not guaranteed." In the "Proposal" the bidder is required to state that he has examined and knows conditions where the work is to be done.

The president of plaintiff corporation testified that he had gone out to the site of the new bridge, had seen sand on the surface of the ground and had observed the old bridge, which was on pilings and was next to the line of the new one. No subsurface exploration or boring of any kind was done by either party, although from the evidence it appears it could have been done at a cost of about twenty dollars and that true conditions would have been thus revealed.

■ Under the clear terms of the contract plaintiff was not entitled to an added sum because of difficulties it encountered in carrying out its agreement. By no reasonable construction could it be said that the provision for payment of cost plus 15 per cent for "extra work" was intended to provide payment of such added charge to compensate the contractor for obstacles overcome in fulfilling his contract. To warrant such elasticity in construing this provision we should be required to hold that it intended to say, "if the city has included in the plans and specifications anything that has misled you, notwithstanding its warning not to rely on them but to satisfy yourself as to conditions, and you are put to added expense in doing what you have agreed to do, this extra expense may be called 'extra work' and our subordinate officials are authorized without any further action on our part to bind us to pay as much as they see fit by way of such extra cost, to which will be added 15 per cent for rental and profits".

The theory is advanced, as above indicated, that defendant had made implied untrue representations, and in reliance upon them plaintiff had entered into the contract. The warning to plaintiff in making his bid as above quoted was ignored, and the "general provisions" of the contract remained unheeded. Yet it is asserted that plaintiff entered into this contract involving in excess of $135,000 in reliance upon an implied representation contained in the plans and specifications to the effect that since they provided for driv-

ing of piles the ground must be soft and sandy. ▇ The true character of the river bed and the rock and shale formation due to proximity to hills was discovered as soon as plaintiff started work. At the very outset, therefore, the falsity of these so-called implied representations was discovered. Plaintiff did not ask to be relieved of its contract and no new contract was entered into between the contracting parties. Plaintiff chose to retain the beneficial values to accrue under the contract into which it had thus been led. It elected to deal with a subordinate official not authorized to contract for defendant, and was content to accept his assurance that it would be paid extra because of the trouble encountered in excavating; and plaintiff has in fact been paid all of the additional compensation which that very official said it was entitled to receive. The propriety of such payment, already made, is not before us, and we herein make no intimation thereon. Having elected to proceed under the contract into which it had entered and to retain the benefits thereunder to accrue, plaintiff cannot refuse to accept the duty imposed by its terms and now seek extra pay for doing just what it had agreed to do. The generous declaration of the city engineer, who was not authorized to contract for the city, to the effect that because of hardship encountered plaintiff should be paid more than the contract provided, could not be construed as binding upon the city. It is a maxim of jurisprudence that "he who takes the benefit must bear the burden" (Civ. Code, sec. 3521), and that "a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting it" (Civ. Code, sec. 1589).

No suggestion is advanced that any new or additional contract was entered into between the parties conforming to the requirements of the charter of defendant city. No theory of *quantum meruit* or estoppel can avail the contractor unless the work done was within the contemplation of the one contract between the parties. (*Nash* v. *City of Los Angeles*, 78 Cal. App. 516 [248 Pac. 689]; *Gamewell Fire Alarm Tel. Co.* v. *City of Los Angeles*, 45 Cal. App. 149 [187 Pac. 163]; *Strauch* v. *San Mateo Junior College District*, 104 Cal. App. 462 [286 Pac. 173].)

In considering a case where the nature of the soil encountered by a contractor in building a drydock was different from that anticipated, the Supreme Court of the United States held that additional compensation should not be allowed, and stated: "The rule by which parties to a written contract are bound by its terms, and which holds that they cannot be heard to vary by parol its express and unambiguous stipulations or impair the obligations which the contract engenders by reference to the negotiations which preceded the making of the contract or by urging that the pecuniary result which the contract has produced has not come up to the expectations of one or both of the parties, is too elementary to require anything but statement." (*Simpson* v. *United States,* 172 U. S. 372 [19 Sup. Ct. 222, 43 L. Ed. 482].)

Sections 207 and 207a of the charter of the city of Los Angeles were in effect when the plans and specifications were adopted and the contract was let in 1924. (Stats. 1911, pp. 2145, 2146.) They were superseded by sections 385 and 386 of the new charter of said city, adopted in January, 1925. (Stats. 1925, p. 1142.) Those sections required a vote of the city council to authorize, in a case such as this, the advertising, bids and awarding of the contract. "Contracts wholly beyond the powers of a municipality are void. They cannot be ratified; no estoppel to deny their validity can be invoked against the municipality; and ordinarily no recovery in *quasi* contract can be had for work performed under them. It is also settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable." (*Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 352 [291 Pac. 839, 71 A. L. R. 161].) The case just cited quotes with approval the case of *Zottman* v. *San Francisco,* 20 Cal. 96 [81 Am. Dec. 96], which holds that a purported ratification is not valid unless it has followed the procedure required for the execution of a contract in the first instance.

■ Since the defendant city in this case cannot be held liable for the additional compensation on the theory of an express or implied contract, nor of ratification, estoppel or *quantum meruit,* and since plaintiff could not recover on the theory that the difficulties encountered constituted "extra work" within the meaning of that term as used in the

contract, so as to justify recovery on that ground—for it appears as a matter of fact from undisputed evidence that it was not extra work but merely extra difficulty in doing the work called for by the contract—we are wholly unable to agree with the conclusion of the trial court awarding judgment to plaintiff.

We distinguish from the instant case certain cases decided by the Supreme Court of the United States which would appear from language used to support respondent's contentions, including *Hollerbach* v. *United States*, 233 U. S. 165 [34 Sup. Ct. 553, 58 L. Ed. 898] ; *Christie* v. *United States*, 237 U. S. 234 [35 Sup. Ct. 565, 59 L. Ed. 933] ; *United States* v. *Atlantic Dredging Co.*, 253 U. S. 1 [40 Sup. Ct. 423, 64 L. Ed. 735]. See, also, *United States* v. *Spearin*, 248 U. S. 132 [39 Sup. Ct. 59, 63 L. Ed. 166]. In none of these cases was the government limited by charter provisions such as those which restrain defendant city in this case, and it affirmatively appears that some affirmative representation or improper concealment misled the contractor to his detriment.

It will be observed that the case of *Shea* v. *City of Los Angeles, ante,* p. 534 [45 Pac. (2d) 221], this day decided by us, presents a legal principle which is not at variance with the views herein expressed.

Judgment reversed with directions to enter judgment for defendant.

Crail, J., and Stephens, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1935.