[Civ. No. 300.    Third Appellate District.—June 20, 1907.]

## SARAH J. YORDI, Respondent, v. FLORA I. YORDI, NELLIE E. YORDI, and ALICE C. YORDI, Appellants.

HUSBAND AND WIFE—DEED FROM WIFE TO HUSBAND—UNDUE INFLUENCE NOT PRESUMED—WANT OF CONSIDERATION.—Undue influence will not be presumed in any transaction between husband and wife from the mere existence of the marital relation; nor will the want of consideration of a conveyance of the wife to the husband raise a presumption of undue influence from the mere fact of the marital relation alone.

ID.—ACTION BY WIFE TO COMPEL RECONVEYANCE—BURDEN OF PROOF—ABUSE OF CONFIDENCE REPOSED.—In an action by the wife to compel a reconveyance of property conveyed by the wife to the husband, she has the burden of proof to establish undue influence, and must show that the husband made use of the confidence reposed in him by her, for the purpose of obtaining an unfair advantage over her.

ID.—DETERMINING ABUSE OF CONFIDENCE—MARRIAGE RELATION, AND WANT OF CONSIDERATION TO BE CONSIDERED.—In determining the question of an abuse by the husband of the confidence reposed in him by the wife, the marriage relation and the want of consideration for the deed by the wife to the husband are facts to be considered, in connection with other facts indicative of such abuse, and those facts have more or less weight in determining that question.

ID.—FORMER DEED OF GIFT TO WIFE—VALUABLE PROPERTY—TITLE VESTED IN WIFE.—Where the husband on the day of the marriage executed and delivered to the wife property of the value of $4,000,

in consideration of love and affection, the title thereto became absolutely vested in her.

ID.—RECONVEYANCE INDUCED BY FEAR—NOTARY OF HUSBAND—WANT OF INDEPENDENT ADVICE—DEED BY HUSBAND TO CHILDREN.—Where shortly before the husband's death the wife was induced by fear, in the absence of independent advice, to reconvey the property to him for a nominal consideration of $10, which was not paid, and to acknowledge the deed before a notary employed by the husband, reposing confidence in him that he would reconvey it to her, instead of which he conveyed it secretly to the children to whom he had transferred all other property, the facts show undue influence on the part of the husband in obtaining the deed, and the wife is entitled to a reconveyance from the children after the husband's death, upon the discovery of such secret conveyance.

ID.—DUTY OF HUSBAND TO WIFE.—A husband is bound by section 158 and 2228 of the Civil Code to act in the highest good faith toward his wife, and may not obtain any advantage over her by the slightest misrepresentation, concealment, threat or adverse pressure of any kind. There must be no constraint upon her or against her free will of what she is unable to refuse. He must deal with her at arm's-length.

ID.—CONFIDENTIAL RELATION—NECESSITY OF INDEPENDENT ADVICE.— Persons standing in a confidential relation toward others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the court that the person by whom the benefits have been conferred had competent and independent advice in conferring them.

ID.—EVIDENCE—DECLARATION OF HUSBAND TO NOTARY—RECORD OF WIFE'S DEED—ORDER STRIKING OUT.—Where the notary in narrating the husband's instruction to him stated that he said that the wife's deed should not have been recorded, and that it was recorded by mistake, the court properly struck out such evidence, as a self-serving declaration, not made in plaintiff's presence, and as not competent to prove that fact.

ID.—CROSS-EXAMINATION OF PLAINTIFF—ABSENCE OF CLAIM OF OWNERSHIP—REDIRECT EVIDENCE—EXPLANATION.—Where on cross-examination of plaintiff she stated that she made no claim to the property prior to her husband's death, upon redirect evidence she was properly allowed to explain that to speak about it would have caused trouble, and that she had confidence that he would give it back to her again.

ID.—WANT OF CONSIDERATION FOR DEED.—On the direct examination of the plaintiff, she was properly allowed to state that there was no consideration for the deed executed by her to her husband, evidently referring to the money consideration.

ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—Where the complaint of the wife alleges intimidation on the part of plaintiff's husband, and

the exertion of his predominating influence over her and taking advantage of the confidence reposed in him by her, and at a time when she was called upon to act without any independent advice, all of which resulted in his obtaining title to valuable property belonging to her without consideration, it states facts sufficient to constitute a cause of action.

ID.—UNCERTAINTY—GENERAL DEMURRER.—Uncertainty is not good ground in support of a general demurrer.

ID.—UNCERTAINTY NOT PREJUDICIAL AFTER TRIAL.—The court will not, in all cases where error has been committed by the trial court in overruling demurrers for alleged ambiguity or uncertainty, order the reversal of a judgment based upon a trial of issues joined upon the complaint and answer, where prejudicial error does not appear, and the defendant has not been misled to his prejudice.

ID.—AMENDMENT OF COMPLAINT TO CONFORM TO PROOFS—DISCRETION—REFUSAL TO SET ASIDE SUBMISSION—FINDINGS.—The court had discretion to allow the plaintiff to amend the complaint to conform to the proof, and to refuse an application of the defendants to set aside the submission, and for a continuance for further evidence, and to file its findings and render judgment thereon, where the defendants have not been deprived thereby of any substantial right.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial. S. K. Dougherty, Judge.

The facts are stated in the opinion of the court.

William B. Bosley, for Appellants.

John O'Gara, for Respondent.

CHIPMAN, P. J.—Action to compel a reconveyance of real property from defendants to plaintiff. Plaintiff had judgment, from which and from the order denying their motion for a new trial defendants appeal.

Plaintiff and Fred Yordi, father of defendants, intermarried on July 5, 1898; on their wedding day, and before the wedding ceremony, Yordi conveyed the premises in dispute to plaintiff, by deed of gift; at that time Yordi was a widower and occupied the premises together with his children, three sons and three daughters (the latter defendants); thereafter he continued to reside thereon with plaintiff and defendants, at the town of Cloverdale, until his death, May 22, 1901;

plaintiff's deed was not recorded until November 14, 1900, and on November 20, 1900, plaintiff reconveyed the premises to her husband, which was recorded November 21, 1900, and on May 3, 1901, he conveyed the said premises by deed of gift to defendants, which was not recorded until May 22d, on the day of his death. The deed from plaintiff to Yordi purports to be a grant, bargain and sale conveyance and recites a consideration of $10, but the uncontradicted evidence was, and the court found, that it was without consideration. About June 22, 1901, plaintiff notified defendants that she rescinded the conveyance made by her to said Fred Yordi and demanded that defendants convey to her the said premises which, being refused, plaintiff on July 3, 1901, filed her complaint herein. The ground of the action was undue influence of plaintiff's husband in procuring the deed from her to him of date November 20, 1900. The defendants in their answer denied the allegations of undue influence and averred that the deed from their father to plaintiff was given in trust, with the promise to hold the legal title to said premises for his use and benefit, and that she would, whenever requested so to do, reconvey the same to him, and that meantime she would refrain from recording said deed. Upon the issues the court found the facts in favor of plaintiff and against defendants.

Appellants challenge the sufficiency of the evidence to support the findings. Certain errors of law are assigned in the admission or exclusion of testimony; it is also contended that the demurrer to the second amended complaint should have been sustained, and also that the court erred in permitting plaintiff to so amend the complaint, after the cause was submitted, as to offer what are claimed to have been issues of fact differing materially from the issues on which the cause was tried.

1. Much of the discussion in the briefs is directed to the inquiry whether a presumption of undue influence arises out of the marriage relation alone, in a transaction where the wife conveys real property to the husband; and, assuming that there is no such presumption, does the evidence establish undue influence? There is printed in the record the written opinion of the learned trial judge which holds with appellants as to the presumption referred to above. But his conclusion was that the evidence was sufficient to establish undue influence. In its main features we are impressed with

the correctness of the conclusions reached upon the evidence and have adopted the opinion as our own. It is as follows:

"Sarah J. Yordi, a resident of San Francisco, prosecutes this action to have a certain deed of conveyance executed by her to her husband, Fred Yordi, on the 20th day of November, 1900, canceled and set aside. The defendants are her step-children and they reside in Cloverdale. The property involved was the home of the plaintiff and her husband from the time of their marriage on July 5th, 1898, to the time of his death in May, 1901. It has always been the home of the defendants and they claim to own the property by deed of gift made to them by Fred Yordi, their father, on the 3d day of May, 1901.

"Fred Yordi and the plaintiff, Sarah J. Yordi, were married in San Francisco between five and six o'clock P. M., on the 5th day of July, 1898. After their marriage they went to Cloverdale and resided there with six children by a former wife. Prior to the marriage he made and executed to her a deed of his home in Cloverdale. The consideration of this deed was love and affection. Its value was about $4,000, and he handed the deed to her in the presence of her aunt, Mrs. Duffy, with the words, 'Here, my dear, this is yours.' The presentation and delivery of this deed vested her with the absolute title to the property in fee simple. This deed was not recorded at the time, and the reason therefor, fairly deducible from the facts proved, was to keep peace in the family. They lived happily together for two years and three months, when Mr. Yordi died of consumption after a lingering illness. During their married life she always reposed great confidence in him.

"A few months before his death, when it became manifest to Mrs. Yordi that her husband was commencing to settle up his worldly affairs and had converted his mercantile store at Cloverdale into a corporation and had given the shares thereof to his children, she had her antenuptial deed recorded. Its existence had never been known to the children. The recording of this deed becoming known to one of the sons through the newspapers, a condition of affairs arose that was unpleasant to the Yordi family. The recording of the deed first became known to Carl Yordi. He informed his father thereof. The next day, when Mr. Yordi went home to his dinner, he had an interview with his wife. What was said

in that conversation was privileged and not permitted to be stated by her as evidence in the case. After this conversation Mr. Yordi went down town and employed a notary to prepare a deed to be signed by his wife conveying this property to him. About an hour afterward Mrs. Yordi went down to Mr. Yordi's store, into his office and met her husband and notary there, and amid profound silence, she signed the deed and went back home.

"From these facts plaintiff contends that the transaction was one between husband and wife, and when this is shown she has made out a *prima facie* case, and the fairness of the transaction must be proven by the defendants, and a failure on their part to do so would entitle her to judgment. The defendants take issue with plaintiff upon this principle of law, and contend that the presumption of unfairness does not exist in transactions between husband and wife. They rely on *Tillaux* v. *Tillaux,* 115 Cal. 671, [47 Pac. 691] ; *Diamond* v. *Sanderson,* 103 Cal. 97, [37 Pac. 189] ; *Stiles* v. *Cain,* 134 Cal. 170, [66 Pac. 232]. These decisions are cited and approved in the recent case of *McDougal* v. *McDougal,* decided January 8, 1902, reported in 135 Cal. 316, [67 Pac. 778], wherein the court says:

" 'There was in fact, no evidence tending to show undue influence, unless it be the relation of husband and wife existing between the parties to the deed, and this relation, under the authority of *Tillaux* v. *Tillaux, White* v. *Warren, Sheehan* v. *Sullivan* and *Stiles* v. *Cain,* must be regarded as of itself having no such effect.'

"These decisions establish the law of this state, and from the mere relation of husband and wife, a business transaction between them will not be tainted with any suspicion of undue influence; that notwithstanding the influence which may exist by the one over the other, a transaction will not, *from this relation alone,* be presumed to be made under undue influence. These decisions may also be said to fix the law of this state that this confidential relation, coupled with an entire want of consideration, will not raise an inference of any unfairness in a transaction between them, but this is the scope of the California cases. Therefore, if plaintiff's case extends no further than this, but is confined within the limits fixed by them, her case is lost. If she has simply shown the marital relation and want of consideration, she falls short

of making out a case of undue influence. She cannot there stop and shift the burden to defendants to prove that this confidence has not been abused. The burden is upon her to go further and show that the husband made use of the confidence reposed in him by his wife, for the purpose of obtaining an unfair advantage over her. (Civ. Code, sec. 1575.) In determining this question, the fact that they were husband and wife when the deed was executed is to be considered as one of the facts in connection with the other facts of the case, and it has more or less weight in determining the question. The relation is one that is easily used and easily abused. As Justice Temple has said in *Stiles* v. *Cain,* 134 Cal. 170, [66 Pac. 232], 'The right to control her own affairs would not free her from what usually in fact is, and is always presumed to be, the predominating influence of her husband.'

"The want of consideration is also a fact present in this case, and while a deed solemnly executed will not be declared void for this reason, if in fact nothing was received by the grantor, or if the consideration was so small as to 'shock the conscience,' yet the fact is one to be considered with the other facts indicative of an abuse of confidence. People make gifts; the consideration may be love and affection entertained and for their better maintenance, support, protection and livelihood, but the deed herein was not a deed of gift. The consideration recited therein was the cold sum of $10 and was never paid. How could such a sacrifice by Mrs. Yordi benefit a dying husband? Is it possible to suggest a rational or reasonable motive on her part in dispossessing herself of her home that her husband had given her before their marriage? The unnaturalness of the transaction suggests the predominating influence. To these two facts—that is, to the facts of a confidential relation and a want of consideration, let there be supplemented the fact that she first formed her intention to make this deed during the conversation with her husband at their home, about an hour before she signed the deed, and at that time her mind was in a state of fear. Plaintiff was asked: 'Q. At the time when you first formed your intention to convey this property back to Mr. Yordi, what was the state of your mind with respect to fear or absence of fear?' 'A. I feared. I had fear.' This fear must, I think, be connected with the intention to make the deed and with reference to it, and to no other subject, and is not consistent with

that state of mind which should exist with reference to such a transaction. It is not in consonance with a state of mind produced by honest persuasion or by any arguments addressed to the understanding or appeals to the affection, and this state of mind formed a part of the whole transaction. Within an hour after this intention was formed, she went to her husband's store, met the notary, signed the deed and went home. No conversation at all took place, no one was present save Mr. and Mrs. Yordi and the notary. And this brings us to the consideration of another strong circumstance usually considered in determining undue influence, namely: Mr. Yordi employed the notary and conducted the whole transaction. Our Code provides that a husband is bound to act in the highest good faith toward his wife and may not obtain any advantage over her by the slightest misrepresentation, concealment, threat or adverse pressure of any kind. (Civ. Code, secs. 158, 2228.) There must be no constraint upon her or against her free will of what she is unable to refuse. (Greenleaf on Evidence, sec. 688.)

''As the writers upon the subject would put it, he must deal with her at arm's-length. And closely connected with this fact is the fact that Mrs. Yordi had no independent or other advice.

''I take it to be a well-established principle of this Court that persons standing in a confidential relation toward others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the Court that the person by whom the benefits have been conferred had competent and independent advice in conferring them. (*Rhodes* v. *Bate,* L. R. 1 Ch. 257.)

''The rule is further stated, and I think correctly, in the English note to *Hugein* v. *Basely,* 2 Lead. Cas. Eq. 595, as follows: 'The conduct of the party benefited must be such as to sever the connection and to place him in the same circumstances in which a mere stranger would have stood, giving him no advantage save only whatever kindness or favor may have arisen out of the connection.'

''As was said in a recent case: 'The wife should have had the benefit of a full, free and private preliminary conference with a competent lawyer or business man who was employed and paid by her and in whom she had confidence and who

would be devoted to her interest and hers only.' (*Pironi* v. *Corrigan,* 47 N. J. Eq. 135, [20 Atl. 227].)

"The relation of confidence therefore existing; the consideration mentioned in the deed being untrue; the wife receiving no pecuniary advantage by the transfer, but, on the contrary, losing her home; the husband obtaining property for nothing and soon transferring it as a gift to defendants; the fact that she formed her intention to deed in an interview with her husband, and was at the time and when she signed the deed in a mental state of fear; that Mr. Yordi employed the notary who took her acknowledgment; and the entire absence of independent advice and that freedom of marital influence which should characterize every such act, all taken together, would, under the law as I interpret it, constitute undue influence. The facts of the case are as strong as, if not stronger than, either *Dolliver* v. *Dolliver,* 94 Cal. 643, [30 Pac. 4], and *Ross* v. *Conway,* 92 Cal. 637, [28 Pac. 785], and the supreme court of this state in both cases held that the facts established undue influence.

"There is evidence in the case of declarations by Mrs. Yordi to the defendants and their brothers that may tend to show fairness of the transfer, but such testimony, under our Code and the law of evidence, is not entitled to much weight, especially when contradicted. It is entitled to but little weight as against the uncontradicted facts above stated, constituting in themselves undue influence.

"Plaintiff has proved the issues by a clear preponderance of the evidence and may prepare and present findings in accordance with this opinion.

"Dated March 28th, 1902.

"S. K. DOUGHERTY,<br>
"Judge."

We may here remark that after plaintiff had conveyed the property to her husband he held the title until shortly before his death, although he had previously deeded all his property to a corporation, the shares of which he gave his children, and plaintiff's deed to him was not recorded until the day of his death. During this interval the children of Yordi showed considerable ill-feeling toward plaintiff, which would have been greatly increased had Yordi reconveyed the property to his wife. When, however, he found his life fast

ebbing away, and that he was about to depart where his wife's reproaches would not reach him, he deeded to his children, and they withheld the deed from record and from her knowledge until his act was beyond recall. Under the circumstances shown it is no unfair inference that Yordi obtained the deed with the secret purpose to convey title to his children, and that the fact was withheld from plaintiff, leaving her to indulge her "confidence in her husband that he would give it (the property) back to her again," as she testified.

2. The deed from Yordi to plaintiff was executed and delivered on the day of their marriage. The parties to the deed are thus described: "Fred Yordi of the County of Sonoma, State of California, the party of the first part, and Sarah Jane Yordi (wife), the party of the second part." Plaintiff was permitted to prove, over defendants' objection, and the court found that the deed was delivered before the marriage was actually celebrated, but on the same day. It is claimed that the finding is not supported by the evidence, because the deed conclusively proved that when delivered the grantee was the grantor's wife, citing subdivision 2, section 1962, Code of Civil Procedure. It seems to us that defendants were in no wise prejudiced by this testimony if it be conceded that it was error to admit it. But we do not think it was error. The question of the time of the delivery, whether before or after the marriage ceremony, was not material. No presumption of undue influence would have arisen in favor of the husband if the deed be regarded as having been delivered after the marriage.

3. On the direct examination, Notary Lewis, who prepared the deed from plaintiff to her husband, under the latter's direction, testified that Yordi instructed him to prepare a new deed similar to an old deed then handed him. Upon cross-examination defendants sought to bring out all that Yordi said to the notary at that time. Plaintiff objected unless it was limited to such parts of the conversation as related to the preparation of the deed by the notary Lewis. The court allowed the question, with leave to plaintiff to move to strike out the answer. The witness answered that Yordi told him "that the former deed made by him to Mrs. Yordi should not have been recorded, that it was recorded by mistake, and now they were going to change it, she was going to deed it back to him." The court, on plaintiff's motion, struck out

that part of the answer which referred to the recording of the former deed. The ruling was correct. The answer was not cross-examination as to matters testified to by the witness in chief, was not made in plaintiff's presence, and besides was self-serving. Appellants claim that it helped to establish one of the issues presented by defendants' answer. It was not competent to thus prove it.

4. Upon her cross-examination by defendants, plaintiff, as a witness, was asked whether, at any time after she had executed the deed of November 20, 1900, to her husband, and prior to his death she had told the defendants or either of them, that the property in question was hers, or that she claimed it, or owned, or had any interest in it, to all of which she answered "No." Upon the redirect, plaintiff's counsel asked her, "What was the reason for not doing so?" Defendants' objection was overruled and the witness answered that it would cause trouble for her husband and herself; that "there would have been war" if she had made known her claim to defendants; that she "had confidence in her husband that he would give it back to me (her) again." It is urged that the court erred and should have disallowed the testimony and should have stricken it out on defendants' motion because the answers were but conclusions and opinions of the witness. But they had a direct relation to the matter brought out on the cross-examination, and were intended to remove from the mind of the court any prejudicial inference it might have drawn from the witness' answers that she had not made known her claim to defendants during her husband's last sickness. If it was material for defendants to show that plaintiff was silent as to her claim upon the property after she had deeded it to her husband, she had a right in reply to explain why she was silent.

5. Upon her direct examination plaintiff was asked the following question: "State what the consideration was for this deed which you executed to your husband." She answered, "No consideration." She had previously testified that she had received nothing for executing the deed. It was objected that the question called for the conclusion of the witness as to a question of law, and that, in permitting her to answer, it was equivalent to allowing her to testify that "she did not hold the said deed on November 20, 1900, upon an implied or constructive trust for the benefit of her husband." It was

said in *Hardison* v. *Davis,* 131 Cal. 635, [63 Pac. 1005], where the right to make a similar inquiry arose: " . . . Being in a position to know the ultimate fact, and appellant having the opportunity to cross-examine him (the witness), it was not improper for him to testify directly that there was no consideration." The inference which appellants say might have been drawn from the answer is highly conjectural and we think not warranted. The court manifestly accepted the answer as referring wholly to the money consideration.

6. It is also claimed that the demurrer to the second amended complaint should have been sustained. It is contended, first, that the general demurrer should have been sustained because the complaint "alleged that said deed of November 20, 1900, was obtained partly by means of intimidation and partly by means of undue influence, but does not set out the facts constituting the alleged intimidation or duress''; citing *Goodwin* v. *Goodwin,* 59 Cal. 560; second, it is contended that if not obnoxious to a general demurrer the complaint was demurrable for uncertainty. The complaint alleges the marriage relation; plaintiff's ownership of the premises as her separate property; that said Yordi, "for the purpose of causing her (plaintiff) to convey to him (her husband) the said lot of land, without consideration, intimidated plaintiff, and exerted upon her the predominating influence which he then had over her by reason of his position as her husband, and used the complete confidence which she then and at all times, until his death, reposed in him, and thereby did then and there cause her, against her will and contrary to her wishes, to make, acknowledge, execute and deliver to him a deed of conveyance of said lot of land, without consideration''; that "plaintiff made . . . and delivered the said deed to said Fred Yordi solely by reason of his said acts and conduct, and not freely or voluntarily''; that "said deed was prepared by a scrivener selected by said Fred Yordi,'' and under his "personal direction''; that the property was of the value of $4,000; that plaintiff received "no pecuniary advantage in return for said deed and said Yordi suffered no pecuniary damage therefor,'' and that "plaintiff had no independent advice in said transaction.''

The point in objection to the complaint chiefly urged is that the particular acts constituting the alleged intimidation or undue influence or abuse of confidence are not set forth. This

is not the case usually found in the reports where the instrument was executed by one enfeebled mentally or bodily and easily susceptible for that reason to the operation of undue influences. It is a case where the effect of the alleged acts must be judged from circumstances difficult of precise affirmation. While, as our supreme court has held, marriage of itself alone will not give rise to a presumption of undue influence in a transaction such as this, the conjugal relation still is an important fact to be considered. Intimidation on the part of plaintiff's husband is alleged and the exertion of his predominating influence over her and taking advantage of the confidence reposed in him by her, and at a time when she was called upon to act without any independent advice, all of which resulted in his obtaining title to valuable property without consideration. The complaint contains sufficient facts to constitute a cause of action. Furthermore, uncertainty is not good ground in support of a general demurrer. (*Ward* v. *Clay*, 82 Cal. 502, 505, [23 Pac. 50, 227].)

This court will not in all cases, where error has been committed by the trial court in overruling demurrers for alleged ambiguity or uncertainty, order a reversal of a judgment based upon a trial of the issues made by the complaint and the answer. Prejudicial error must appear; the party must have been misled to his prejudice, or the error otherwise appear injurious and not merely abstract, before cause for complaint can be predicated of its uncertainty or ambiguity. (*Gassen* v. *Bower*, 72 Cal. 555, [14 Pac. 206] ; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, [38 Pac. 410].)

The answer specifically denies the averments of the complaint, and sets forth distinctly the facts upon which defendants relied at the trial. The evidence was directed to the issues thus framed, and it is manifest from the record that defendants were not misled or injured by the failure of plaintiff to allege with greater particularity the facts upon which she relied. Conceding the rule of pleading to be as claimed by appellants, we are satisfied that the substantial rights of the parties were not affected by the alleged uncertainty in the complaint.

7. The opinion of the court was filed March 29, 1902, and findings of fact and judgment entered September 16, 1902. The second amended complaint was filed July 18th, to which answer was filed September '10, 1902. On June 9, 1902,

plaintiff, after due notice, moved the court for leave to file amended complaint "to conform to the proof given at the trial thereof." This was objected to on the grounds: 1. That it would raise issues of fact other than those presented by the original complaint and answer thereto; 2. That no evidence had been received outside of the issues presented by the pleadings on which the cause was tried; 3. That it would be an abuse of discretion to allow the proposed amendment. The objections were overruled and amended complaint filed. The court made an order allowing defendants ten days to plead to the amended complaint, and findings were deferred until the coming in of defendants' answer. Subsequently plaintiff confessed the demurrer with leave to file a second amended complaint to conform to the proofs at the trial which the court ordered plaintiff to file within ten days. On July 16th plaintiff served and filed her second amended complaint to conform to the proof, and on July 25th defendants filed their demurrer thereto. This demurrer was called for hearing on September 2, 1902, on which date defendants applied for a postponement of two weeks. The court refused this request and heard and overruled the demurrer, allowing defendants five days to answer, and on September 8th defendants answered the second amended complaint. On September 10th plaintiff gave notice that she would on September 15th move the court to sign and file the findings of fact and conclusions of law. On September 12th defendants served and filed a notice that they would on September 22d move the court to set aside the submission of the cause and also for an order granting leave to defendants to introduce testimony in addition to that adduced at the trial, and for a further order setting said cause for trial. The grounds of the motion were: 1. That plaintiff's second amended complaint does not conform to the evidence; 2. That the issues presented by plaintiff's second amended complaint and defendants' answer thereto differ from the issues presented in the original complaint and defendants' answer thereto; 3. That defendants desire to and can adduce testimony in addition to that presented at the trial, tending to support the denials and allegations in their answer to plaintiff's second amended complaint. The motion was made upon the affidavit of one of defendants' counsel and upon the papers and records in the case. On

September 15th plaintiff moved the court in accordance with her notice of September 10th, and thereupon defendants moved for a continuance of the hearing of said motion until September 22d, the day noticed for the hearing of the motion mentioned in their notice of September 12th, and until after the hearing of their said motion to set aside the submission of the cause. The court denied defendants' motion for continuance, and made and signed findings on said September 15th, and final judgment was entered September 16th. On September 22d the court heard and denied defendants' motion to set aside the submission.

It was said in *Lee* v. *Murphy,* 119 Cal. 364, [51 Pac. 549], that while it is unusual to find it necessary to amend the complaint after a case has been submitted, there is, under the power given by section 473 of the Code of Civil Procedure, no limitation as to the time before judgment entered when the power of the court ceases. It was also there said that this power to allow amendments in the interest of justice is uniformly held to be within the discretion of the trial court.

The only question, then, is: Did the court abuse its discretion in allowing the amendment? And this question must be answered in the negative unless the amended complaint introduced new issues substantially different from those presented by the complaint under which the evidence was submitted, and unless it appears that the rights of the defendants were prejudiced by the amendment. The evidence adduced on both sides seems to have been addressed to the issue of undue influence, and there is no showing beyond the opinion of one of the counsel for defendants, expressed in his affidavit, that if the case were reopened important additional evidence would be produced to rebut plaintiff's case. So far as we can see, defendants had an opportunity at the trial to rebut the evidence on which the amended complaint rests, and they seem to have availed themselves of the opportunity. If they refrained, as they say they did, from cross-examining plaintiff, when called as a witness, upon any point bearing upon the issue of undue influence, they cannot now be heard to complain. The tendency of plaintiff's testimony was obvious, and that she was not permitted to go into particulars as to what took place between her and her husband on November 20, 1900, was due to no reluctance on her part but from a ruling of the court forbidding it. Defendants had then the opportunity, they now

say they desire, to cross-examine her.    In their motion for a new trial neither surprise nor newly discovered evidence is made a ground.    If the defendants' motion to set aside the submission of the case had no merit, it was not prejudicial error to file findings and enter judgment without waiting to hear such motion, and it appears that when, subsequently, the motion was denied, no exception was taken.

We cannot discover that defendants have been deprived of any substantial right by the procedure complained of.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1907.