[Civ. No. 500.   Third Appellate District.—October 5, 1908.]

MERCED BANK (SOPHIE A. IVETT, Substituted), Respondent, v. JAMES D. PRICE, JEFF D. PRICE, THOMAS PRICE, NETTIE L. PRICE, MARY WILSON, and W. C. WILSON, Her Husband, Appellants.

ORDER DENYING NEW TRIAL—REVIEW UPON APPEAL—MATTERS NOT REVIEWABLE.—When there is no appeal from the judgment, and the appeal is solely from an order denying a new trial, neither the sufficiency of the complaint nor of a demurrer thereto, nor an order denying a nonsuit moved for on the ground of insufficiency of the complaint, nor the sufficiency of the findings to support the judgment, nor any conflict therein, can be made the subject of review upon the appeal from such order.

ID.—REVIEW OF EVIDENCE AND RULINGS—GROUNDS OF OBJECTION—ERROR MUST APPEAR.—The court may look into the bill of exceptions to determine whether the evidence is sufficient to support the findings, and whether any prejudicial errors of law were committed at the trial. But error must be affirmatively made to appear; and when the grounds of an objection to a ruling are not stated, no reviewable error appears.

ID.—FAILURE TO FIND UPON MATERIAL ISSUE—DECISION AGAINST LAW.—Any failure by the court to find upon a material issue is a decision against law, reviewable as such, upon a motion for a new trial, and upon appeal from the order denying the same. But, held, that no such failure appears in the record. [By supreme court on petition for hearing therein.]

MORTGAGE TO BANK—PRIOR PLEDGE—DELIVERY FOR FORECLOSURE—ASSIGNMENT BY INSOLVENT BANK TO PLEDGEE—DEFENSE OF FRAUD UNSUPPORTED.—When a mortgage to a bank was pledged to its creditor, and redelivered to the bank for foreclosure, and the bank became insolvent pending suit, and assigned the note and mortgage upon a settlement absolutely to the pledgee, who was substituted as plaintiff, and a defense was set up that the assignment was a fraud upon the creditors of the bank, and upon defendants as such, held, that the defense of fraud is unsupported by the evidence, that none of the creditors of the bank were shown to be injured, and the assignment was in course of liquidation of the bank's business with the presumed consent of the bank commissioners, who could not have regarded the mortgage as an asset of the bank in which its creditors were entitled to share.

ID.—PLEDGE OF NOTE AND MORTGAGE—"THINGS IN ACTION"—POSSESSION NOT ESSENTIAL TO LIEN.—The note and mortgage held by the pledgee, being "things in action," are subjects of lien without change

9 Cal. App.—12

of possession, and not being dependent upon possession, the redelivery of them to the bank for collection did not extinguish the lien.

ID.—RIGHT OF BANK TO SUE AS OWNER SUBJECT TO LIEN.—The bank to whom the note and mortgage were delivered by the pledgee had the right to sue thereon as owner thereof, subject to the lien, and was equally interested with the pledgee in enforcing collection thereof.

ID.—SUIT IN CORPORATE NAME AS PAYEE—PLEADING—UNNECESSARY ALLEGATION.—The bank had the right to sue in its corporate name as payee of the note and mortgage, without the necessity of alleging intermediate assignments, or that the bank was in course of liquidation.

ID.—AUTHORITY OF BANK TO ASSIGN MORTGAGE TO PLEDGEE IN SETTLEMENT UNDER BANK COMMISSIONERS' ACT.—The bank was not without authority under the bank commissioners' act to make an absolute assignment of the note and mortgage, in settlement with the pledgee, whose interest accrued before the bank commissioners took charge of the bank, which was then a going concern in process of liquidation under the direction of the bank commissioners who had full knowledge of its affairs, and presumably approved of such settlement.

ID.—PARTIES—JOINT INTEREST—EXCLUSIVE INTEREST OF PLEDGEE BY ASSIGNMENT—SUBSTITUTION.—When the suit was commenced, both the bank and its pledgee were interested in the cause of action, and either could sue upon it, and when the bank, which it was agreed should sue, assigned all of its interest to the pledgee, the latter, as full owner, was entitled to be substituted in the place of the bank as plaintiff.

ID.—STATUTE OF LIMITATIONS.—The action having been properly commenced by the payee in joint interest with the pledgee, within the statute of limitations, the absolute assignment of all interest by the payee to the pledgee, and the substitution of the assignee as plaintiff, was not the commencement of a new action by the substitute, subject to the statute.

ID.—LEAVE TO FILE SUPPLEMENTAL COMPLAINT—PLEADING OF ASSIGNMENT—DISCRETION—FACTS APPEARING IN PROOF.—The court did not abuse its discretion in granting leave to the substitute to file a supplemental complaint pleading the assignment, where no new material issue was presented, and all of the facts respecting the rights of the plaintiff, the pledge of the note and mortgage, the delivery of it for collection, and the assignment to the plaintiff, had already appeared in proof.

APPEAL from an order of the Superior Court of Mariposa County denying a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

Geo. G. Goucher, W. H. Larew, and W. S. Larew, for Appellants.

J. W. Knox, for Respondent.

CHIPMAN, P. J.—Action to foreclose a mortgage. Plaintiff had judgment. Defendants appeal from the order denying their motion for a new trial. There is no appeal from the judgment. Neither the sufficiency of the complaint nor the sufficiency of the findings to support the judgment can be reviewed on this appeal. (*Jenkins* v. *Frink,* 30 Cal. 586, 596, [89 Am. Dec. 134]; *Shepard* v. *McNeil,* 38 Cal. 72; *Roberts* v. *Eldred,* 73 Cal. 394, 398, [15 Pac. 16].) It was said in *Moore* v. *Douglas,* 132 Cal. 399, [64 Pac. 705]: "The appeal from the judgment, not having been taken in time,. cannot be considered; and the appellant's contention that the complaint failed to state a cause of action, and that the demurrer to the same should have been sustained, also that the judgment is not supported by the findings, and that the findings are contradictory and inconsistent with the pleadings, cannot therefore be considered, there being no appeal from the judgment." (Citing cases.) We may, however, look into the bill of exceptions to determine whether the evidence is sufficient to sustain the findings and also to determine whether any prejudicial errors of law were committed at the trial. (*Churchill* v. *Flournoy,* 127 Cal. 335, [59 Pac. 791].)

The promissory note in question was executed by defendants, the Prices, and was secured by mortgage executed by them, and also by defendant Mary Wilson, the husband of Mrs. Wilson being joined in the action. The note was executed January 31, 1894, and matured October 1, 1894, and was made payable to the Merced Bank, or order. The action was commenced by the Merced Bank on September 30, 1898. It appeared that on January 31, 1895, the plaintiff bank and Sophie A. Ivett, as administratrix of the estate of John L. Ivett, deceased, entered into an agreement, which recited that the bank is indebted to Mrs. Ivett as administratrix, certain sums aggregating $20,198.45, and also to the Bank of British Columbia, which holds certain notes and securities of said Merced Bank; that the Merced Bank was desirous of releasing said securities, and to that end agreed to transfer and as-

sign the same to Mrs. Ivett upon her advancing and paying to said Bank of British Columbia the sum of $4,000; that upon said payment by her she was to release to Merced Bank all securities held by her in excess of $15,148.84 "in face value of the principal thereof"; that the Merced Bank was to issue to her a certificate of deposit for $15,148.84 and another certificate for $6,049.61, "now due her as aforesaid; said certificates to show on their face that they are issued for moneys due before liquidation, and its promissory note for said sum of $4,000.00." To secure this note the directors of the bank were to guarantee its payment, and to secure the said sum of $15,148.84, Mrs. Ivett was to retain the securities turned over by the Bank of British Columbia, in face value of that sum, "if sufficient thereof are satisfactory to her," and if not, "then a sufficient amount of other securities to make up said sum." Mrs. Ivett made the payment to the Bank of British Columbia and received from plaintiff bank certain securities, among which were the note and mortgage sued on in this action. It was testified that plaintiff bank failed to deliver to Mrs. Ivett all the securities agreed to be delivered to her, but that they were retained by the bank and collected and the proceeds were not paid to her, and that the $4,000 advanced by her was to be repaid out of the assets of the bank other than said securities, which was thereafter done. This payment, together with $450 and $600, collected from securities held by her, was all she had received from said securities up to October 2, 1900. On September 10, 1898, Mrs. Ivett addressed a letter to plaintiff bank, in which she said: "As the $6,500 Price note dated January 31, 1894, which I hold as collateral security will outlaw Oct. 1st, 1898, and I do not care to be put to the trouble of collecting the same, or be held responsible for not collecting the same, I hereby authorize you to proceed to collect the said note and mortgage, and for that purpose herewith send you note endorsed 'For collection.' Sophie A. Ivett." Thereafter, on September 30, 1898, the present action was commenced by the plaintiff bank, in the usual form of complaint on foreclosure, duly verified. On September 27, 1899, defendants answered, alleging the transfer of said note and mortgage to Mrs. Ivett, and that she and not the plaintiff is the owner and holder thereof, praying judgment that plaintiff is not the owner and holder

of said note and mortgage. The execution of the note and mortgage was admitted by failure to deny, as also was non-payment. An amended complaint, correcting the description of the land, was, by leave of court, filed on July 18, 1901. On October 2, 1900, plaintiff bank and Mrs. Ivett entered into an agreement of final settlement of their transactions and mutually released each other from further liability each to the other, in consideration of which plaintiff bank assigned and transferred "absolutely all those securities still uncollected which said Sophie A. Ivett has heretofore held as collateral under · agreement . . . dated January 31, 1895, together with all notes, mortgages, trust deeds, relating to the same, judgments recovered upon the same, rights of action pending or existing on the same, and every right, title and interest of said Merced Bank in and to the same." This assignment included the present cause of action. On July 28, 1901, defendants served their notice to dismiss the action on the ground of want of prosecution, and on August 7, 1901, the plaintiff bank served, and on August 10, 1901, filed in court, notice of motion "for an order permitting said action to be continued in the name of the original plaintiff, or that said Sophie A. Ivett may be substituted as plaintiff in said action." This motion was based upon the said agreement of October 2, 1900. On October 1 and 2, 1901, said motion to dismiss was heard by the court and granted; thereafter an appeal from the order was taken to the supreme court and the order was reversed. (*Merced Bank* v. *Price,* 145 Cal. 436, [78 Pac. 949].) On April 13, 1905, the court made an order substituting Sophie A. Ivett as plaintiff in said action. At the beginning of the trial of the action, to wit, on June 19, 1905, defendants filed their first amended answer alleging the transfer of the cause of action to Mrs. Ivett; the distribution to her of all the estate of J. L. Ivett, deceased, on September 16, 1895; denying indebtedness to plaintiff bank and pleading the statute of limitations (Code Civ. Proc., sec. 337); that the action was not commenced by any person or corporation having the right to maintain the same, within four years after the date of said note. Defendants also thereafter moved to dismiss the action "on the ground that no allegation of assignment from Merced Bank to Sophie A. Ivett is made by said amended complaint," ·and said motion was denied, defend-

ants excepting.    Thereupon and on June 19, 1905, defendants filed a second amended answer, alleging, in addition to what had been previously alleged, that when the original complaint was filed, the Merced Bank was not a corporation existing and doing business, etc., but "had ceased to do business as a corporation, prior to the filing of said original complaint" and "had no power or authority to maintain this action"; denied the alleged assignment of the cause of action to Mrs. Ivett "at any time subsequent to the commencement of the action"; denied the power of the bank to make any assignment thereof or that it had any assignable interest in said cause of action in the month of October, 1901.    It further appears that at the trial the said note and mortgage "were proved and admitted in evidence . . . over defendants' objections and exceptions," but no grounds of objection are stated; the letter of Mrs. Ivett of September 10, 1898, to plaintiff bank was admitted in evidence, and there was testimony that at that time Mrs. Ivett held the note and mortgage as collateral security and she turned them over to the bank for collection only; that they were part of the securities referred to in the agreement of January 31, 1895; "that she held said note and mortgage as collateral security up to October 2, 1900, and that on October 2, 1900, she made a complete settlement with the Merced Bank and received the assignment and transfer of said note and mortgage absolutely as set out in said assignment of October 2, 1900," which latter was duly proved and admitted in evidence.    The decree of distribution of the estate of J. L. Ivett to Mrs. Ivett was also admitted in evidence.    It appeared at a later stage of the case and was found by the court that on the petition of the bank commissioners, in an action commenced October 12, 1895, under the act approved March 30, 1878, and amended January 25, 1895, the said bank was adjudged insolvent and prohibited from transacting any further business, "except for the purpose of liquidation."    Resuming the history of the trial, it appears that the bank commissioners extended the period for liquidation, from time to time, and on February 7, 1902, caused an order to be entered in its records reciting that all the assets of the bank have been sold and the proceeds paid to the creditors of the bank, and the affairs of said bank are fully administered and wound up, concluding as follows: "It is ordered

that said Bank be dropped from the list of 'Banks.'' The order of substitution, filed April 13, 1905, was admitted in evidence ''over the defendants' objections and exceptions,'' the grounds of which are not stated.    Thereupon defendants ''moved for a nonsuit upon the ground that the complaint does not state facts sufficient to constitute a cause of action, which motion for a nonsuit was denied by the court, to which defendants excepted.''    The cause was thereupon submitted with leave to the parties to file briefs, and thereafter, ''and before said matter had been finally submitted to the court for its decision,'' the plaintiff served and filed notice of motion for permission to file a supplemental complaint to ''conform to the facts established by the evidence at the trial of said cause on June 19, 1905.''    A copy of the proposed supplemental complaint was duly served with said notice.    This proposed complaint is similar to the original complaint as amended, but sets forth the assignment to plaintiff, before the commencement of the action, as collateral security, certain notes and mortgages, among them those sued upon, the delivery of the same to plaintiff bank for collection, before the commencement of the action, the subsequent absolute transfer and assignment to her, on October 2, 1900, and her substitution as plaintiff.    At the hearing defendants objected to the filing of said supplemental complaint on several grounds, among which are the following: That at the trial defendants pointed out the necessity of filing a supplemental complaint; that upon the trial plaintiff failed to make sufficient proof to entitle her to recover, such as is contemplated by section 471, Code of Civil Procedure; that where an assignment is relied upon it cannot be pleaded for the first time after trial; that plaintiff has been guilty of gross laches in not sooner amending the complaint; that to permit the amendment would be to allow plaintiff to change her position to defendants' prejudice; that the proposed amendment shows upon its face that the action is barred by the statute of limitations, for that Mrs. Ivett's right of action accrued to her by assignment October 2, 1900, and is barred by sections 337 and 443, Code of Civil Procedure.    On July 22, 1905, the court made an order permitting the filing of said supplemental complaint ''and granted defendants permission to demur to and answer said supplemental complaint, and to introduce any

evidence thereon that defendants might desire, and also permitted plaintiff to introduce further evidence if she so desired; and that all evidence heretofore introduced and all proceedings taken should stand; and said supplemental complaint was thereafter, on July 22, 1905, filed and served, to which defendants excepted.'' A general and special demurrer was interposed to the supplemental complaint and overruled, and defendants thereupon answered reiterating their former defenses and pleading the statute of limitations, and alleging that the assignment was fraudulent and void as to creditors of plaintiff bank, and further, that plaintiff Ivett "had long since collected all moneys stipulated and agreed to be paid by the Merced Bank to her under the agreement of January 31, 1895.'' Later, March 13, 1906, defendants, by leave of court, filed an amended answer to the supplemental complaint, denying the corporate existence of plaintiff bank after it was adjudged insolvent, in 1896; that it was not a licensed corporation under the act of March 20, 1905, and that it failed to pay the tax prescribed by section 20 of the act and thereby forfeited its charter under section 6 of the act; set up the contract of January 31, 1895, and averred that the indebtedness of plaintiff bank, to secure which the securities in said contract mentioned were pledged to Mrs. Ivett, has been fully paid and that she has appropriated to her own use in fraud of other creditors of said bank other securities; that Mrs. Ivett never commenced any action upon the principal obligation of said bank to her under the contract of January 31, 1895, and all right of action thereon is barred and her lien as pledgee was entirely extinguished under section 2911, Civil Code, and her lien thereon ceased February 1, 1899; that defendants were stockholders and creditors of said bank at all times mentioned in the plaintiff's supplemental complaint and were pecuniarily interested in the collection and distribution of the assets of said bank, and averred that Mrs. Ivett voluntarily surrendered the note and mortgage sued upon to the said bank and lost her lien thereon, under sections 2913 and 2988, Civil Code, and that plaintiff is not now and never has been the owner of said note and mortgage; that said note and mortgage were not specifically mentioned in the decree of distribution of Mrs. Ivett's husband's estate and she took no interest therein by said decree; denied that the board of directors of said bank had authority to make the assignment of

said note and mortgage to Mrs. Ivett, and the same was fraud-
ulent and void, and denied that said assignment of October 2,
1900, was ever delivered to Mrs. Ivett; that it was never re-
corded, but was secret; that said note and mortgage were not
delivered to her, but remained in the hands of the attorney of
said bank, and there was no actual and immediate delivery
thereof; that the action is barred by the statute of limitations
for reasons already stated; that a new cause of action is set
up by the amended and supplemental complaint which is
barred by the statute (Code Civ. Proc., sec. 337).

The cause came on to be heard on March 13, 1905. By the
order of the court the evidence, documentary and oral, was
to be considered as before the court, as well as the record of
all prior proceedings. It appeared from the testimony, with-
out contradiction, that the note and mortgage in question were
held by Mrs. Ivett as collateral security under the agreement
of January 31, 1895, and were given to the bank for the sole
purpose of collection, the proceeds, less costs and charges, to
be applied to its debt due Mrs. Ivett; that upon payment by
her to the Bank of British Columbia of the $4,000 agreed
upon, in addition to the $20,198.46 then due her from plain-
tiff bank, the latter delivered to her certain securities, among
them the note and mortgage sued upon; that plaintiff bank
did not deliver to her all the securities it had agreed to deliver,
and some were retained by it and collected and the proceeds
not turned over to her; that the $4,000 was to be paid to her
out of the assets of the bank other than said securities, but
was afterward repaid out of a portion of said securities and
not out of other assets of the bank; that she had received from
said securities only repayment of said $4,000 and $1,050 on
two notes; that prior to October 2, 1900, she had been paid
nothing except as above, and prior to that date she had made
no use of any of the said securities except as above stated;
that she never converted any of said securities to her own
use, except as above shown, toward the payment to her of the
$20,198.46 due her from said bank; that after receiving the
assignment of October 2, 1900, she used it wherever necessary
in foreclosing mortgages; that the assignment was not re-
corded, but was "an open transaction and had been public to
everyone interested, especially to the defendants, ever since
the fall of 1900, and especially during the summer of 1901,
when the defendants were moving to dismiss this action for

want of prosecution." There was also undisputed evidence that plaintiff bank was at all times mentioned in the complaint, a corporation, and that said bank had never been dissolved or ceased to exist, "but that all licenses required by law of said bank, up to the time of trial, had been paid"; that the assignment of October 2, 1900, was made by the plaintiff bank in good faith and in the ordinary course of liquidation of its affairs, "and in order to expedite the settlement of its affairs and was an open and public transaction and was considered by all parties interested as for the best interest of the creditors."

There was evidence submitted in support of a statement showing the amounts realized by Mrs. Ivett upon the securities held by her. By this statement it appears that there was still due on the indebtedness of the bank to her the sum of $3,799.92.

The record does not purport to contain all the evidence, and it is manifest from the findings that all the evidence was not included in the transcript. Such as is before us has been substantially set out in the foregoing history of the case and of the trial, and is without conflict. The defendants submitted no evidence in support of their answer.

The findings are quite lengthy, and cover every material issue and some issues not material. They support the judgment and plaintiff's contention upon all points and negative the allegations set up by defendants in their defense to the action.

The briefs discuss numerous questions, as arising upon the record—chiefly by way of challenge to the sufficiency of the evidence to support the findings—some of which are either not properly here for review or are not pertinent to any material issue.

1. The order denying the motion for nonsuit was made upon the sole ground of the insufficiency of the complaint. But the sufficiency of the complaint cannot be inquired into; cases *supra*. For like reason we cannot consider the demurrer, as that goes to the sufficiency of the complaint.

2. In no instance was any ground stated in support of objections to the evidence offered by plaintiff and allowed by the court. The mere objection to some proceeding in the course of the trial, unaccompanied by any ground or reason for the objection, presents no reviewable error, for error must

be made affirmatively to appear, and in the absence of any ground for the objection we cannot say there was error in the ruling and the objection must be disregarded.

3. All question of actual fraud is unsupported by any evidence, and all claim that the creditors of the plaintiff bank were injured must disappear, for there is no evidence that the creditors generally were injured, and the bank commissioners found and declared "that all the assets of the Merced Bank (in liquidation) have been sold and all the proceeds therefrom paid to the creditors of the bank, and the affairs of the bank are fully administered and wound up." This order was entered by the bank commissioners, February 7, 1902, and could not have been true if the note and mortgage in suit had been regarded by the bank commissioners as assets of the bank in which the creditors generally were entitled to share. The transfer to plaintiff, October 2, 1900, was made while the bank commissioners were performing their duties; it was an open and well-known transaction, and must have come to the knowledge of the commissioners, and the undisputed evidence is that the transfer was in due course of liquidation of the bank's affairs. We must assume, in the absence of evidence to the contrary, that the bank commissioner sanctioned the transaction as done in process of liquidation, for, having knowledge of it, they were in position and it was their duty, if disapproved, to have arrested its consummation. Besides we do not see how in this action objection can be made on behalf of the creditors generally, or by the defendants as such creditors.

4. The claim that there is a failure to make findings upon material issues, and that the findings are conflicting must be disregarded; cases *supra*.

5. The securities held by Mrs. Ivett, being "things in action," are subjects of lien without change of possession (*Kings* v. *Roberts* (Cal.), 31 Pac. 620) ; and not being dependent upon possession, the redelivery to the bank for the purposes of collection did not extinguish the lien (Civ. Code, sec. 2913).

6. Plaintiff bank had a right to commence the action, as it was the owner of the note and mortgage, subject to Mrs. Ivett's lien, and was equally interested with her in enforcing collection. (Civ. Code, sec. 2888; *Graham* v. *Light,* 4 App. Dec. 400, [88 Pac. 373].)

7. The action was properly commenced in the corporate name of the Merced Bank (*Union Savings Bank* v. *Dunlap,* 135 Cal. 628, [67 Pac. 1084]; *Argues* v. *Union Savings Bank,* 133 Cal. 139, [65 Pac. 307]); and the note being payable to it as a corporation by the defendants, no allegation of the intermediate assignments was necessary or that the bank was in course of liquidation.

8. We see no reason for holding, under the bank commission act (Stats. 1895, p. 172), that the plaintiff corporation was without authority to absolutely transfer the cause of action to Mrs. Ivett, the transaction avowedly and in fact being in course of liquidation and being untainted by fraud, and, so far as appears, for the best interest of the creditors. Section 11 of the act makes it the duty of the commissioners to take control of the corporation and all its property until the order of the court, which "shall order the commissioners to surrender to the corporation the property thereof in their possession, for the purpose of liquidation. The directors or trustees of all banking corporations in liquidation shall be' permitted to continue the management of the affairs of such corporations during the process of liquidation." The assets of the bank transferred by the agreement of October 2, 1900, were in pledge to Mrs. Ivett by the agreement of January 31, 1895, and before the commissioners took control of the bank. Her right to realize upon them in payment of the bank's indebtedness to her was fixed and determined. The bank did not keep faith with her in the matter of securing her claims. It was thought best that a full settlement between her and the bank should be made, and such settlement was necessary in order to wind up the affairs of the bank. Instead, therefore, of having these securities outstanding and in an unsettled condition as collateral, an agreement was made by which the bank was discharged from all liability to Mrs. Ivett, and she became the absolute owner of the assets. This was accomplished while the bank directors were acting under the control and supervision of the commissioners, and while the present action was pending. The act provides that the corporation "shall make reports of the condition of its affairs to the bank commissioners in the same manner as the solvent banks mentioned in the act, and, in addition thereto, shall state the amount of dividend paid, debts collected, and the amounts realized on property sold, if any, since the previous report."

(Section 11.)   The court found: "That full reports of the business of said bank in liquidation had been regularly made to the bank commissioners as required by law, and all moneys collected by said bank in liquidation have been accounted for and reported to the Board of Commissioners." We must assume that the commissioners performed their official duty (Code Civ. Proc., sec. 1963), and, doing so, they must have had knowledge of and approved the transaction now in question; they could not otherwise have truthfully certified that the affairs were finally wound up. The act forbade the transaction of the usual banking business of the corporation—such as receiving deposits, loaning money and the like—but it had express statutory authority "to continue the management of the affairs of such corporation during the process of liquidation, under the direction of the bank commissioners." In *Union Savings Bank* v. *Dunlap,* 135 Cal. 628, [67 Pac. 1084], it was held that the corporation might levy an assessment upon the unpaid capital stock, for the purpose of liquidating the bank's indebtedness, and in its corporate name could sue the stockholders to make the collection. The court said: "The assets belonged to the corporation, and though not a going concern for all purposes, it is a going concern for purposes of liquidation; the cause of action for unpaid subscription accrues to the corporation, and the action is properly brought in its name." (See, also, *Union Savings Bank* v. *Leiter,* 145 Cal. 696, 706, [79 Pac. 441].)

9. Appellants contend, also, that the action was commenced by the wrong party, or in the wrong capacity, and that the defect is fatal and cannot be cured by an amendment substituting the right party. (Citing *Dubbers* v. *Goux,* 51 Cal. 153; *Sterrett* v. *Barker,* 119 Cal. 495, [51 Pac. 695] ; *Rennick* v. *Garland,* 1 Cal. App. 238, [82 Pac. 89].) In *Dubbers* v. *Goux,* the action was commenced by the husband, who afterward made a motion that his wife be substituted as plaintiff because she was the real party in interest. The lower court allowed the substitution, and defendant appealed. The supreme court said: "The court erred in permitting Mrs. Dubbers to be substituted for her husband as plaintiff. It is not pretended that she had succeeded to any interest held by her husband pending the action, nor that she had any joint interest with him in the subject-matter. On the contrary, she was substituted as plaintiff on the theory that she was the only

party in interest at the commencement of the action, and had ever since been so. She was permitted to become the sole plaintiff, not to prosecute the same cause of action stated in the complaint, on the ground that she had succeeded to it, but another and distinct cause of action in her separate right. In effect, it was permitting her to prosecute a new suit, for another cause of action, by merely substituting her as sole plaintiff in the former action. It is scarcely necessary to say that section 473, Code of Civil Procedure, affords no warrant for such a proceeding.'' The difference between that case and the one here is obvious. The very conditions, in the case cited, which the court found to be wanting to justify the substitution, are here present. Both the corporation and Mrs. Ivett were interested in the cause of action, and either could sue upon it—the former as owner and the latter as pledgee (Civ. Code, sec. 3006) ; this common or joint interest after the action was commenced became centered in Mrs. Ivett by assignment, and in her substitution she became plaintiff in this same cause of action. We do not doubt the propriety or legality of substituting her as plaintiff after the assignment. The action might have been continued in the name of the original plaintiff for her benefit, or she might have been substituted as sole plaintiff. (Code Civ. Proc., sec. 385, and numerous cases cited in Kerr's Cyc. Code.) There is nothing in the other cases above cited, as relied upon by defendants, to support their contention.

10. The point that the statute of limitations had run against the note and mortgage before the assignment to Mrs. Ivett, and that her substitution made her plaintiff in an action barred by the statute is without merit. Appellant's contention is that the filing of the complaint in the name of the Merced Bank as an existing corporation, without disclosing that it had been adjudged insolvent, was unauthorized and unlawful and was also unlawful because commenced to enforce a lien for the benefit of the lien claimant; that the running of the statute of limitations was not stopped because the action was unlawfully commenced, and therefore when Mrs. Ivett was substituted the action was barred by section 337, Code of Civil Procedure. It is a sufficient answer that the action was legally and properly commenced in the name of the payee of the note, the Merced Bank, and that Mrs. Ivett was substituted as plaintiff in the same and not in a different cause,

of action in which at all times she had an interest—ultimately the sole ownership.

11. The order granting plaintiff's motion to file a supplemental complaint was within the discretion of the court, and will be reversed only upon a showing that this discretion was abused. (*Yordi* v. *Yordi,* 6 Cal. App. 20, [91 Pac. 348]; *Lee* v. *Murphy,* 119 Cal. 364, [51 Pac. 549, 955]; Code Civ. Proc., sec. 473.)    As was said in *Yordi* v. *Yordi,* the question whether the court abused its discretion "must be answered in the negative unless the amended complaint introduced new issues substantially different from those presented by the complaint under which the evidence was submitted, and unless it appears that the rights of the defendants were prejudiced by the amendment." The facts embodied in the supplemental complaint, to conform to which the leave to amend was granted, had fully appeared in the course of the trial; no new facts or matters of surprise were suggested by the proposed amendment, and no fact not already known to defendants and already matter of proof was alleged therein; full opportunity was given defendants to demur to or answer the complaint, and they did both. In point of fact, the only material issue not already pleaded was the assignment to plaintiff, and this, as well as the agreement by which she held the note and mortgage and how and why she came to redeliver it to the bank, had been made subjects of proof. It is clear to our minds that defendants were deprived of no substantial right by the order of the court and that it acted within its discretion.

The foregoing disposes of all the questions which appear to call for examination. We discover no prejudicial error in the record, and the order is therefore affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 3, 1908, and the following opinion was then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal for the third district is denied. In so far as the opinion of that court may be held to intimate that an objection that the trial court

has failed to find upon a material issue cannot be considered upon a motion for a new trial, or on an appeal from an order denying such a motion, it is erroneous. It is well settled that such a failure renders the decision one against law. But we have been unable to ascertain from the record that there was any such failure in this case.

BEATTY, C. J.—I concur in the foregoing modification as far as it goes. I also think there should be a rehearing.