[Civ. No. 3197.  First Appellate District, Division One.—April 12, 1920.]

CHARLES F. STERN, Substituted, etc., as Superintendent of Banks, Respondent, v. RONALD McDONALD et al., Appellants.

[1] PROMISSORY NOTE — SALE OF BONDS BY BANK TO DIRECTORS — VALIDITY OF CONSIDERATION.—Where, following an impairment of the assets of a bank for which it could be closed, in order to relieve that embarrassment and to insure the bank's continuance in business, the directors, at the direction of the superintendent of banks, purchase certain corporate bonds from the bank, giving their several promissory note, secured by a pledge of the bonds, in payment, such note is based upon a valid consideration.

[2] ID.—FRAUDULENT REPRESENTATIONS—RELIANCE ON—PLEADING.—In an action on such promissory note, the defense of fraud, based upon certain representations claimed to have been made by the superintendent of banks at the time of its execution, is insufficiently pleaded where it is not alleged that the defendants relied upon said representations or that they believed them to be true.

[3] ID.—MAKING OF REPRESENTATIONS—DENIAL—FINDINGS—APPEAL. In such action, the superintendent of banks and the bank examiner who took part in the transaction having denied that such representations were made, and the court having found that their

---

1. Consideration for note given to make good depletion of capital or assets of bank, note, L. R. A. 1917B, 688.

testimony was true, that finding is conclusive on the appellate court, notwithstanding there was evidence to the contrary.

[4] ID.—ACTION AFFECTING BONDS — DUTY TO PROTECT — ALLEGATION OF OWNERSHIP—RESCISSION OF SALE.—After the bank became insolvent, an action having been commenced involving the bonds pledged to it as security for the note given in payment thereof, but to which the bank was not made a party, it was the duty of the superintendent of banks to intervene to protect the bonds and to controvert any claim made by third persons claiming ownership or seeking to obtain possession of said bonds, and it was not necessary in such proceeding that the superintendent of banks allege and prove that the bank held said bonds merely as a pledge; and his act in alleging in his cross-complaint in intervention that the bank was the owner of the bonds did not constitute a rescission or repudiation of their sale to the directors of the bank.

[5] ID.—EXECUTION OF SEVERAL NOTE—VALIDITY OF—NONCOMPLIANCE WITH ORDER OF SUPERINTENDENT OF BANKS.—The promissory note given by the directors of the bank in payment of the bonds was not invalid because it was a several note, and not a joint and several note, as the superintendent of bank had directed it should be.

[6] ID.—SALE OF BONDS TO DIRECTORS—ABSENCE OF RESOLUTION AUTHORIZING—ESTOPPEL.—In an action by the superintendent of banks against the directors of an insolvent bank on their promissory note given in payment of certain bonds purchased by them from the bank prior to its insolvency, the defendants are estopped from asserting that the sale of the bonds to them was not valid because it was not authorized by a resolution of the board of directors, but that it was made merely upon an order issued by the superintendent of banks.

[7] ID.—PLEDGE OF SECURITIES—RIGHT TO PERSONAL JUDGMENT.—In the absence of statute or stipulation to the contrary, the possession of pledged property does not suspend the right of the pledgee to proceed personally against the payor for his debt without selling the pledge.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. L. Foster, Chas. A. Barnhart, Leon E. Morris and Louis V. Crowley for Appellants.

A. A. De Ligne for Respondent.

7. Remedies of pledgees, note, 79 **Am. Dec.** 499.

KNIGHT, J., *pro tem.*—The superintendent of banks of California, on behalf of the Kern Valley Bank, an insolvent corporation, obtained a judgment against the above-named defendants, severally, in amounts aggregating eighty-five thousand dollars, from which all of said defendants appeal except the defendant Sarah L. Conner, the executrix of the last will of C. L. Conner, deceased. The action is based upon a promissory note, dated October 15, 1909, drawn in favor of said Kern Valley Bank for the aggregate sum of one hundred and five thousand dollars, payable in the amounts and in the manner following: Ronald McDonald, forty thousand dollars; C. L. Conner, twenty thousand dollars; P. L. Jewett, ten thousand dollars; S. Wright Jewett, ten thousand dollars; L. P. St. Clair, twenty thousand dollars; George W. Price, five thousand dollars. All of the payors named therein signed the note except L. P. St. Clair. The plaintiff alleges that the payment of said note was secured by a pledge of ninety-five bonds, of the par value of one thousand dollars each, of the Sunset Road Oil Company, a corporation, and prays judgment against the payors, severally, for the amounts for which they respectively obligated themselves on the note, and that "said bonds be sold according to the usual course and practice of this court, and that the proceeds thereof be applied to the payment of said promissory note."

C. L. Conner died prior to the commencement of the suit, and his executrix was made a party defendant. She filed no answer. The other defendants joined in an answer, in which they urged the defenses of no consideration, fraud and estoppel. The court found against the defendants on those issues, and further found that said note was given in payment of the purchase price of the bonds which had been pledged as security for the payment of the note, and which the court found had been previously sold to the defendants by the bank. The judgment made no disposition of the pledged bonds. At the time of the execution of the note all of the payors were directors and principal stockholders of said Kern Valley Bank, and Conner and McDonald were, respectively, its president and cashier, and S. Wright Jewett and George W. Price were its assistant cashiers. On May 12, 1911, the bank became insolvent and W. R. Williams,

as superintendent of banks, took possession. The note in question and the pledged bonds were among the bank's assets.

The record discloses abundant evidence to support the findings and judgment. It shows that immediately prior to October 15, 1909, said Sunset Road Oil Company bonds, of which the bank owned a large number, had depreciated in value to the extent that the bank's capital had become impaired; that Alden Anderson, then superintendent of banks, demanded that defendants, who, as above stated, were the directors and principal stockholders of the bank, pay one hundred and five thousand dollars into the bank, in cash or its equivalent, and directed that this should be done by means of a sale from the bank to the defendants of ninety-five bonds of said Sunset Road Oil Company, at par and accrued interest, and stated that the joint and several promissory note of defendants, properly secured by the bonds so purchased, would be accepted in payment of said bonds. Anderson informed defendants that unless this arrangement was carried out he could not allow the bank to continue business. The transaction was consummated in accordance with Anderson's directions, except that a several note was executed and delivered to the bank instead of a joint and several note, and that St. Clair did not sign the note, thereby reducing the aggregate amount of the note from one hundred and five thousand dollars to eighty-five thousand dollars. Subsequently one J. W. Harper, a bank examiner, acting under the direction of Anderson, visited the bank and verified the fact that the note had been executed and the bonds pledged. Harper at that time was informed that St. Clair had not signed the note because he was out of town, but that he would do so upon his return. Across the bottom of the note was indorsed, in the handwriting of the defendant McDonald, "Secured by ninety-five bonds of one thousand dollars, being bonds No. 645 to 740, inclusive, of the Sunset Road Oil Co." These bonds were afterward listed by the defendants, as officers of the bank, in the bank's reports as pledged bonds, and the interest on the note was paid monthly by defendants up to and until one month before the bank closed, in May, 1911.

[1] The evidence above narrated clearly shows a legal sale of said bonds from the bank to the defendants, and

that said sale constituted a valid consideration for the note. The conceded purpose for which the sale was made and the note given was that the bank might be allowed to continue business. There was an impairment of the bank's assets, for which the bank could have been closed, and in order to relieve that embarrassment and to insure the bank's continuance in business the directors, at the direction of the superintendent of banks, purchased said bonds and executed said note. This was done to bring up the amount of the bank's depreciated capital to the standard fixed by the superintendent of banks. That of itself constituted a valuable consideration for the note. It has been held by numerous authorities that a note or bond executed by the directors of a bank to make good an impairment of the bank's assets, so that the bank may continue in business, is based upon a valid consideration. (*Skordal* v. *Stanton,* 89 Minn. 511, [95 N. W. 449] ; *First Nat. Bank* v. *Felt,* 100 Ind. 680, [69 N. W. 1057] ; *Hurd* v. *Kelly,* 78 N. Y. 588, [34 Am. Rep. 567] ; *Murphy* v. *Gumaer,* 18 Colo. App. 183, [70 Pac. 800] ; *National Bank of Salt Lake* v. *Nelson,* 38 Utah, 169, [111 Pac. 907].)

[2] The defense of fraud urged by defendants is based upon certain representations claimed to have been made by Anderson to the defendants at the time of the execution of the note, to the effect that one W. S. Tevis would also purchase a like number of bonds, and in payment thereof would execute a similar note, but that he had failed to do so, and that defendants were unaware that he had not done so until after the bank had been closed in May, 1911. This defense is insufficiently pleaded, for the reason that there are no allegations made by defendants that they relied upon said representations or that they believed them to be true. [3] However that may be, a consideration of this defense seems quite unnecessary, for the reason that both Anderson and Harper denied that any such representations were made, and the court found that their testimony was true. Any evidence to the contrary would raise a mere conflict and would not justify an interference with the findings of the trial court.

[4] The defense of estoppel is based upon an alleged rescission or repudiation of the sale of the bonds by superintendent Williams. In this respect it is alleged and was

proved that in an action independent from this one, commenced by the Mercantile Trust Company of San Francisco against the Sunset Road Oil Company, a corporation, involving the bonds of said Sunset Road Oil Company, Williams, as superintendent of banks, intervened and filed a cross-complaint, alleging "that said Kern Valley Bank was the owner of the specific bonds here involved." The fact that he did so, however, utterly fails to prove rescission or repudiation. As holder of the pledged bonds it was his duty to protect them and to controvert any claim made by third persons claiming ownership or seeking to obtain possession of said bonds, and it was not necessary in such a proceeding that Williams should allege and prove that he held said bonds merely as a pledge. As pledgee he was vested with a special property in said bonds sufficient to maintain an action against third persons for the recovery of said bonds. (31 Cyc. 824; *Treadwell* v. *Davis*, 34 Cal. 601, [94 Am. Dec. 770]; *Thompson* v. *Toland*, 48 Cal. 99; *Merced Bank* v. *Price*, 9 Cal. App. 177, [98 Pac. 383].) Therefore, the allegations of Williams in that action that the bank was the owner of said bonds was in accordance with the law and the facts.

[5] Appellants' contention that said note was invalid because it was not a joint and several note, as Anderson had directed it should be, is also without merit. Appellants knew of the purpose for which the note was given, and as officials of the bank they were presumably familiar with the form of the note signed by them. They afterward recognized the validity of the note by listing it among the bank's assets and by paying interest on it monthly for a year and a half. Furthermore, it is not apparent wherein appellants have been prejudiced by the execution of a several note. If it had been a joint and several note the individual defendants under the law could have been called upon to pay the full amount of the note. If anybody has suffered by the oversight it is the bank's creditors and not the appellants.

[6] Appellants also claim that the sale of the bonds was not valid because it was not authorized by a resolution of the board of directors, but that it was made merely upon an order issued by the superintendent of banks, in whom, it is claimed, the power to authorize such sale was not vested. The answer to that is that it does not appear from the rec-

ord whether or not such a resolution was in fact passed, but assuming that it was not passed, it does not lie with the defendants to take advantage of the point, for the reason that as payors of the note the law will not allow them to relieve themselves of their obligations to the bank because they, as directors of the bank, in dealing with the bank, may have willfully or otherwise exceeded their lawful authority.

[7] Appellants' final point is that the judgment is erroneous because it merely provides for the recovery of the note without reference to the security. It is contended that the judgment should direct that the security be sold and the proceeds applied to the payment of the note. The authorities, however, do not support appellants' contention. It has been repeatedly held that in the absence of statute or stipulation to the contrary, the possession of pledged property does not suspend the right of the pledgee to proceed personally against the payor for his debt without selling the pledge, for the reason that the security is only collateral. (*Jones* v. *Evans*, 6 Cal. App. 88, [91 Pac. 532], wherein the authorities are reviewed.)

Judgment affirmed.

Waste, P. J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 12, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 10, 1920.

All the Justices concurred.